PEOPLE v BAILEY

Docket No. 101017. Argued December 6, 1995 (Calendar No. 10). Decided June 18, 1996. Rehearing denied 453 Mich 1204.

Richard L. Bailey was charged in the Detroit Recorder's Court, Michael J. Callahan, J., with second-degree murder, but was convicted by a jury of voluntary manslaughter. The trial court refused a defense request to give an instruction on assault with intent to do great bodily harm less than murder as a cognate lesser included offense of second-degree murder. The Court of Appeals, SHEPHERD, P.J., and TAYLOR and R. D. GOTHAM, JJ., reversed, citing *People v Boles*, 420 Mich 851 (1984) (Docket No. 152415). The people appeal.

In an opinion by Justice BOYLE, joined by Justices RILEY, MALLETT, and WEAVER, the Supreme Court *held*:

The trial court properly refused to give the instruction on assault with intent to do great bodily harm less than murder as a cognate lesser included offense of the principal charge of second-degree murder. No evidence was presented at trial that any alleged act following the defendant's assault of the decedent constituted an independent intervening cause that precluded the defendant's criminal liability for the death of the decedent.

1. When reviewing the propriety of a requested lesser included offense instruction, it first must be determined if the lesser offense is necessarily included in the greater charge, or if it is a cognate lesser included offense. To be a necessarily included lesser offense, it must be impossible to commit the greater offense without first having committed the lesser. Cognate lesser included offenses are related and hence cognate in the sense that they share several elements and are of the same class or category, but may contain some elements not found in the greater offense. The distinction is important: only in the area of cognate lesser included offenses must the evidence adduced at trial be reviewed to determine if it would support a conviction of the cognate offense. Before a cognate offense instruction is given, it is also necessary that the lesser offense be of the same class or category as the principal charge. If no reasonable jury could find a cognate offense because of the absence of evidence, the trial judge should not give the requested instruction.

2. Assault with intent to do great bodily harm less than murder is a cognate lesser included offense of the principal charge of second-degree murder because second-degree murder can be committed without committing the lesser offense of assault with intent to do great bodily harm less than murder. Where a defendant admits activity that, as a matter of law, constitutes proof of the distinguishing element, the basis for instruction on the lesser crime evaporates. By necessary implication, assault with intent to do great bodily harm less than murder presupposes that the assailant's act did not cause death. If death has occurred and the defendant's admitted act constitutes a legally cognizable cause of the death, instruction of the jury regarding a crime not intended to punish acts causing death are logically precluded.

3. Some evidence must appear on the record to support the elements of the requested lesser included cognate offense instruction. There is no way of separating uncontested evidence of an intentional act from a theory of unintentional death. It must be determined if the defendant has done more than merely invite the jury to engage in pure speculation that the defendant's act was not a legally proximate cause of the decedent's death. In order for instruction on the lesser offense of assault with intent to do great bodily harm less than murder to be justified by the evidence, there must be some evidentiary basis on the record for the jury to conclude, first, that the defendant did not cause the decedent's death, and, second, that the defendant did not act with malice. Where a defendant admits felonious intent and does not furnish a basis for a reasonable jury to find that the act was not the cause of death, the jury should not be charged with cognate offenses that permit a finding of nonculpability for the death.

4. Where an independent act of a third party intervenes between the act of a criminal defendant and the harm to a victim, that act may only serve to preclude the defendant's criminal liability where the intervening act is the sole cause of harm. In this case, the defendant failed to introduce evidence that the defendant's acts were not a legally recognizable cause of the decedent's death. Thus, instruction on the lesser included offense of assault with intent to do great bodily harm less than murder was unwarranted.

Reversed and remanded.

Justice CAVANAGH, joined by Chief Justice BRICKLEY, and Justice LEVIN, dissenting, stated that the court's refusal to instruct the jury regarding the cognate lesser included offense of assault with intent to do great bodily harm less than murder, thus removing an appropriate lesser offense from the jury's consideration, was error requiring reversal. Because the jury chose to acquit the defendant of the

charged offense of second-degree murder and instead convicted him of another lesser included offense, the error was not harmless. The decision of the Court of Appeals should be affirmed and the case remanded for a new trial, in which the trial court should be required to give the assault instruction if requested.

The proper inquiry in this case is whether the evidence adduced at trial would have supported a conviction for assault with intent to do great bodily harm less than murder. A jury may infer the requisite specific intent from circumstantial evidence. Even though a finding of that intent would support the intent for second-degree murder, it would also support the intent for the assault offense. By refusing to instruct regarding the assault offense, the trial judge precluded the jury from determining that the defendant was guilty of that offense and not of homicide. Because the evidence adduced at trial would have supported a conviction for the assault offense, the trial court was required to accede to the defendant's request for the assault instruction. Failure to do so was error requiring reversal.

Justice LEVIN, dissenting, stated that the elements of assault with intent to do great bodily harm less than murder are: an assault, i.e., an attempt or offer with force and violence to do corporal hurt to another, coupled with a specific intent to do great bodily harm less than murder. Sufficient evidence was introduced to show an assault and the requisite intent. An instruction should have been given.

In this case, the jury was instructed that it might find the defendant guilty of second-degree murder if it found that he intended to do great bodily harm to the victim and the victim died. The court had found that there was sufficient evidence that the defendant acted on adequate provocation in the heat of passion to justify an instruction on voluntary manslaughter. The jury was so instructed, and found the defendant guilty of voluntary manslaughter. He was sentenced to serve five to fifteen years. In refusing an instruction on assault with intent to do great bodily harm less than murder, the court precluded the jury from finding an admittedly cognate lesser offense of second-degree murder that carries a maximum penalty of ten years. Where there is no evidence that the defendant acted on adequate provocation in the heat of passion, but there is, as in this case, evidence that the defendant did not intend to kill, the defendant ordinarily would be entitled to an instruction on involuntary manslaughter for grossly negligent conduct in inflicting an injury in excess of that intended. Nevertheless, the Legislature has decided that there is to be an offense less than either second-degree murder or manslaughter dubbed assault with intent to do

great bodily harm less than murder, carrying a maximum ten-year penalty rather than the fifteen-year maximum for manslaughter.

Because a jury is not instructed that it must convict a defendant of second-degree murder if it finds an intent to do great bodily harm and death resulted, there is no reason why a jury, unwilling to find the requisite malice (from the intent to do great bodily harm) to support a conviction of second-degree murder, should be left with no alternative than acquittal unless it finds the requisite elements to convict the defendant of manslaughter. It is within the province of the jury, as trier of fact, to conclude that, although the defendant intentionally committed great bodily harm that resulted in death, the defendant is not a murderer or manslaughterer, and, accordingly, acquit the defendant of second-degree murder, reject manslaughter, and convict the defendant of assault with intent to do great bodily harm less than murder.

207 Mich App 8; 523 NW2d 798 (1994) reversed.

*People v Boles*, 420 Mich 851; 358 NW2d 894 (1984) overruled.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *Janet A. Napp*, Assistant Prosecuting Attorney, for the people.

*Joan Ellerbusch Morgan* for the defendant.

Amicus Curiae:

*Earl R. Spuhler* for the Criminal Defense Attorneys of Michigan.

BOYLE, J. We are asked to decide if the trial court erred in refusing defendant's request to provide the jury with an instruction on assault with intent to do great bodily harm less than murder[1] as a cognate lesser included offense of the principal charge of second-degree murder.[2] We hold that the trial court

---

[1] MCL 750.84; MSA 28.279.

[2] MCL 750.317; MSA 28.549.

properly refused to give that instruction. No evidence was presented at trial that any alleged act following defendant's assault of the decedent constituted an independent intervening cause, cutting off defendant's criminal liability for the death of the decedent. Evidence that defendant proximately caused decedent's death thus stood uncontroverted. At best, defendant only introduced evidence that there may have been a second, contributory cause of death in addition to the defendant's admitted attack on the decedent with a baseball bat. Consequently, because there was no evidentiary basis for separating a death resulting from defendant's intentional act from the theory that defendant committed only an intentional act of assault with intent to commit great bodily harm, the defendant failed to meet the requirement for cognate lesser included offense instruction that the evidence adduced at trial support the requested lesser offense. *People v Beach*, 429 Mich 450, 464; 418 NW2d 861 (1988). We reverse the decision of the Court of Appeals and remand to that Court for consideration of the remaining issues raised by the defendant in the Court of Appeals, but not addressed in its opinion.

I

A

This appeal arises from an incident that occurred on July 15, 1991, in the City of Detroit. Although somewhat differing accounts of the events were presented at trial, for present purposes, we rely primarily on the account of the incident provided by defendant. Richard Bailey testified that on the date noted above, he encountered the decedent, Charles Peoples, on the front porch of the apartment building

where both resided when defendant was taking his dog for a walk. Defendant chastised Peoples for drinking beer on the front porch, an activity that had recently been prohibited by the owner of the building.[3] Peoples responded that Bailey had no business telling him what to do.

Defendant further testified that he then proceeded off the porch and across the street with his dog. At that time, defendant noticed his brother and sister-in-law driving up the alley. Defendant continued across the street, and upon turning to return to the apartment building, noticed his brother standing outside his car, with a baseball bat in his hands. Defendant also observed that his brother and Peoples, who was on the sidewalk on the passenger side of the car, were shouting at each other, although he could not tell what the discussion was about.[4] When Peoples stepped back a couple of steps, defendant's brother tossed the baseball bat in the back seat of his car. At that point, Peoples returned to his seat on the porch.

Bailey testified that he interpreted the events he observed as continued acts of harassment of his family by Peoples. Bailey alleged that throughout the three-week period that he had known the decedent, Peoples had continually harassed and made negative comments to Bailey and his family. Responding to the confrontation he witnessed between Peoples and his brother, Bailey walked back across the street, dropped his dog's leash in front of his brother, and retrieved his brother's baseball bat from the car. Bai-

---

[3] Defendant testified that the building owner had asked him to keep an eye out to make sure there was compliance with the rule.

[4] Defendant's brother testified that Peoples had approached the car and asked if they wanted to go smoke some cocaine with him.

ley then proceeded around the car to where Peoples was seated, yelled at Peoples, "I'm tired of you fucking with my family. I'm tired of you just doing what you can do," and struck Peoples in the left knee with the baseball bat. Peoples then stood up, which Bailey interpreted as a sign that Peoples was going to retaliate. Bailey reacted by striking Peoples again with the bat, this time hitting him on his left side. Peoples then walked to the side rail of the porch, grasped it in both hands, and asked Martha Anderson, a woman who lived with him and who was present on the porch during the course of these events, to let him in the door of the apartment building. Anderson let Peoples inside.

Although no witnesses observed Peoples immediately after entering the apartment building, it is uncontroverted that Peoples made his way up to the third floor. Defendant presented the testimony of Helen Noble, a resident of the apartment building who lived with defendant Bailey, who testified that she observed Peoples staggering down the third-floor hallway of the apartment for a few seconds and then saw him fall on his face. Noble further stated that she summoned Gerald Coutier, another resident of the building, to the spot where Peoples had collapsed and then departed for work.

At trial, Coutier testified that when he first observed Peoples lying in the third-floor hallway, he asked Peoples if he was "okay," to which Peoples responded affirmatively and said he was just going to his brother's apartment.[5] Coutier testified that he observed a cut above Peoples' left eye, and told Peo-

---

[5] Charles Peoples' brother resided in an apartment on the third floor.

ples he might need some stitches. Peoples repeated his previous response, and Coutier went to his apartment.

Coutier testified that after his initial encounter, he passed by Peoples on two additional occasions. The final time he observed Charles Peoples lying in the hall, Coutier testified that Peoples' brother, William, and Martha Anderson were also present. On this occasion, Coutier testified that he observed William kick Peoples two times on the left side, wearing a pair of blunt-toed dress shoes, both times stating "Come on, get up." Coutier stated that when kicked, Peoples' body rolled up and back. On rebuttal, Anderson testified that she had summoned William Peoples to the hallway, that William came into the hallway without shoes on, and that William never kicked the decedent.[6]

The parties stipulated to the Wayne County medical examiner's report, which was read into the record:

> "I hereby certify that on the 16th day of July in the year 1991, at the Wayne County Medical Examiner's Office, in accordance with the provisions of law, there was made an examination of the body and personal inquiry into the cause and manner of the death of Charles Peoples, a 45-year old white male who died at Detroit Receiving Hospital, Detroit, Michigan on the 15th day of July in the year 1991. It is my opinion that the decedent died of blunt force injuries sustained as a victim of assault. There was a purple contusion on the left side of the back, back of the left leg, and a laceration of the forehead. The internal examination showed left rib fractures involving 10 to 12, ruptured spleen with capsular hematoma and hemoperitonium [sic]. The manner of death is homicide."

---

[6] William Peoples died later on the same day as the incident before us from unrelated causes.

B

Defendant Bailey was charged with second-degree murder and tried before a jury. In addition to receiving instruction on the elements of the principal charge, the jury was instructed on the lesser included offense of voluntary manslaughter and with regard to the requisite factual finding to conclude that defendant's act caused decedent's death. The trial court refused defendant's request that the jury be instructed on the lesser included offense of assault with intent to do great bodily harm less than murder.

During closing argument, defense counsel asserted that the jury lacked sufficient evidence to conclude that defendant's admitted blows with the baseball bat caused decedent's death. He also acknowledged that the jury lacked testimony about whether the kicks allegedly administered by decedent's brother could have caused the injuries reported by the medical examiner. Nonetheless, counsel further argued that the kicks acted as an intervening cause of death.[7] The

---

[7] In his closing argument, defense counsel stated, in pertinent part:

[Defendant] did it hard enough, apparently, to do some damage, obviously. Now, you have in evidence also, you don't have any testimony for that but what you have is a report.

You don't have any testimony as to whether or not the kicking could have caused in this particular case the rupture of the spleen.

You don't have that testimony. You don't have testimony about whether or not the kicking could have caused injury, fractures to the ten to twelfth ribs.

And based upon what is said here, unless you have some other knowledge, you don't really know what capsillary hematoma or what hemoperiteneum [sic] is.

What you [have] then is not enough to say that it was by the bat that the—the bat was the instrument. And it was not [by] the bat that the deceased met his death. There was, we submit to you, an intervening cause here, something that happened after that, the

jury returned a verdict finding defendant guilty of voluntary manslaughter.

Defendant appealed his conviction as of right in the Court of Appeals, arguing that the trial court had erred in refusing to instruct the jury on assault with intent to do great bodily harm less than murder and that reversal was required. The Court of Appeals reversed, citing this Court's order peremptorily reversing the Court of Appeals and remanding the case for a new trial in *People v Boles*, 420 Mich 851 (1984), rev'g 127 Mich App 759; 339 NW2d 249 (1983).[8] In *Boles*, we opined that the trial judge had erred in refusing to give a requested instruction on assault with intent to do great bodily harm less than murder as a lesser included offense of second-degree murder, even though the Court of Appeals had found that the defense theory "conceded that defendant had killed the deceased with a knife." *Boles*, 127 Mich App 771. Explaining that it felt constrained by *Boles*, the Court of Appeals urged this Court, "in reviewing this case, to explain 'how and why, where a defendant admits acting with felonious intent and does not dispute death as a result, a jury must be permitted to find nonculpability for such death.' " 207 Mich App 8, 12; 523 NW2d 798 (1994) (citation omitted). We granted the prosecutor's application for leave to appeal. 449 Mich 852 (1995).

---

kicking, that in effect, while the person was in a bad shape, in effect, caused the death.

[8] 207 Mich App 8; 523 NW2d 798 (1994).

II

A

Initially adopted as an interim measure until a
court rule could be promulgated, *People v Henry*, 395
Mich 367, 374; 236 NW2d 489 (1975), the formula for
instruction on lesser included offenses first articu-
lated by this Court in a series of cases in 1975 contin-
ues to provide the basis for guidance regarding the
propriety of such instruction.[9] Those foundational
rules, however, have been developed and refined by
this Court through a number of opinions over the past
twenty years. See, e.g., *People v Stephens*, 416 Mich
252; 330 NW2d 675 (1982); *Beach, supra; People v
Pouncey*, 437 Mich 382; 471 NW2d 346 (1991); *People
v Hendricks*, 446 Mich 435; 521 NW2d 546 (1994).
Although the prosecution again urges us to adopt a
rational view of the evidence approach to included
offenses consistent with federal practice, *Sansone v
United States*, 380 US 343, 349-350; 85 S Ct 1004; 13 L
Ed 2d 882 (1965), see *Hendricks, supra* at 442-443,
n 12, we approach resolution of this case by applying
the common-law method of analyzing the specific
question before us within the bounds of our case law.

When reviewing the propriety of a requested lesser
included offense instruction, we first determine if the
lesser offense is necessarily included in the greater
charge, or if it is a cognate lesser included offense.
Necessarily included lesser offenses "must be such
that it is impossible to commit the greater without
first having committed the lesser." *People v Ora*

---

[9] Statutory authorization for allowing a trier of fact to convict a defend-
ant of lesser degrees of an offense charged, except where the defendant is
charged with certain drug offenses, is provided by MCL 768.32;    MSA
28.1055.

*Jones*, 395 Mich 379, 387; 236 NW2d 461 (1975). Cognate lesser included offenses "are related and hence 'cognate' in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense." *Id.*

The distinction between necessarily included and cognate lesser offenses is important to a trial court determining whether to grant a properly requested lesser offense instruction, because it is only in the area of cognate lesser included offenses that the evidence adduced at trial need be reviewed to determine if it would support a conviction of the cognate offense. *Beach, supra* at 463-464. Before a cognate offense instruction is given, it is also necessary that the lesser offense be of the same class or category as the principal charge. *Hendricks, supra* at 444. If no reasonable jury could find a cognate offense because of the absence of evidence, "then the [trial] judge should not give the requested instruction." *Pouncey, supra* at 387.

B

Defendant correctly characterizes the offense of assault with intent to do great bodily harm less than murder as a cognate lesser included offense of the principal charge of second-degree murder. The greater offense of second-degree murder can be committed without committing assault with intent to do great bodily harm less than murder, and both crimes are serious offenses against the person.

The elements of assault with intent to do great bodily harm less than murder are (1) an assault, i.e., "an attempt or offer with force and violence to do corpo-

ral hurt to another" coupled with (2) a specific intent to do great bodily harm less than murder. *People v Smith*, 217 Mich 669, 673; 187 NW 304 (1922). Commission of the crime is punishable by imprisonment for not more than ten years, or a fine not in excess of $5,000. MCL 750.84; MSA 28.279. Second-degree murder is a general intent crime, *People v Langworthy*, 416 Mich 630, 645-651; 331 NW2d 171 (1982), that encompasses all murder other than first-degree murder and is punishable by imprisonment for life, or any term of years. MCL 750.317; MSA 28.549. The elements of second-degree, or common-law, murder are "(1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm." *People v Dykhouse*, 418 Mich 488, 508-509; 345 NW2d 150 (1984). While the mens rea of intent to inflict great bodily harm that is necessary for the lesser offense requested in the instant case is sufficient to meet the required mens rea for second-degree murder, the greater crime can also be committed with different mental states than intent to inflict great bodily harm. Therefore, the greater offense of second-degree murder can be committed without committing the lesser offense of assault with intent to do great bodily harm less than murder, dictating that the lesser offense be classified as cognate.

C

As Chief Justice BRICKLEY's analysis in *Beach* explains, when a cognate offense instruction is

requested, the evidence adduced at trial must be examined to determine if it would support conviction of the lesser offense. *Beach, supra* at 463-464. In *People v Chamblis*, 395 Mich 408, 419-425; 236 NW2d 473 (1975), in the context of lesser included offenses, this Court rejected an inquiry into the evidence adduced at trial that would direct a trial court to determine if "there is evidence which would *justify the jury* in concluding that the greater offense was *not* committed and a lesser included offense was committed." *Id.* at 419 (emphasis in original, citation omitted). The *Chamblis* Court, instead favored allowing greater jury discretion to bring in any verdict it deemed just by inquiring simply whether the evidence adduced at trial would support a guilty verdict on the lesser charge, had defendant only been charged on the lesser offense. *Id.* at 423.

More recently however, in *Beach, Pouncey,* and *Hendricks*, we have explained that in the context of cognate offenses, the jury's mercy-dispensing power is not unlimited.

> [U]nless there is some evidentiary protection against an appeal to the jury's mercy-dispensing power, it is likely that the evidence introduced will be "whatever manner of evidence . . . of use in obtaining a charge on the least punitive lesser included offense possible in order that the jury may have the opportunity to be merciful." . . . If the jury's mercy-dispensing power is unrestrained, attention to the factfinding duty may be diverted, and the jury may assume the punishment prerogative of the court. [*Hendricks, supra* at 447.]

As we clarified in our examination of the same class or category requirement in *Hendricks* and the evidentiary issue in *Beach* and *Pouncey*, our included-

offense precedent is not an invitation for a court to abdicate its duty. More specifically, it is neither necessary nor sound policy to require the trial court to blind itself to uncontroverted proof of an element of the greater crime that would necessarily raise a defendant's culpability to that of the more serious crime, if all elements common to the two offenses were found to be proven beyond a reasonable doubt. Where a defendant admits activity that, as a matter of law, constitutes proof of the distinguishing element, the basis for instruction on the lesser crime evaporates.[10]

By necessary implication, the crime of assault with intent to do great bodily harm less than murder presupposes that the assailant's act has not caused the death of the victim. If such harm has occurred, and the defendant's admitted act constitutes a legally cognizable cause of the death, instruction of the jury regarding crimes not intended to punish acts causing such an egregious result are logically precluded. At the point a court has before it uncontested evidence that a criminal homicide has been caused by a defendant's acts, there is no justification for instruc-

---

[10] The dissent argues that our decision allows "the trial judge to usurp the jury's determination of all essential elements of the offense" because "the jury could choose to believe or disbelieve any or all the evidence." *Post* at 688. This indictment is incorrect for two reasons. First, defendant presented no evidence to permit the jury to conclude that he did not act with malice or that his act was not the factual and legal cause of decedent's death. Second, simply because the jury has the power to dispense mercy and reach conclusions contrary to the weight of the evidence does not mean it has the right to do so. The jury "has the *power* to acquit on bad grounds, because the government is not allowed to appeal from an acquittal by a jury. But jury nullification [like the jury's ability to convict a defendant of a lesser crime than the evidence proves] is just a power, not also a right . . . ." *United States v Kerley*, 838 F2d 932, 938 (CA 7, 1988) (emphasis added).

tion on merely assaultive offenses.[11] If a lesser cognate instruction is to be justified in such an instance, there must be some evidentiary basis for the jury to conclude that the causation chain leading from the greater harm back to defendant's admitted acts has been broken by an independent, intervening cause.

D

In *People v Edwards*, the companion case to *People v Beach, supra*, we considered the propriety of instruction on the offense of involuntary manslaughter as a cognate lesser included offense of the principal charge of first-degree murder. In *Edwards*, a resident of a unit of an apartment building perished in a fire that originated on the front porch of the building. Evidence was presented that the defendant had argued several days before the fire with another resident, at which time the defendant threatened to burn the building down. The defendant admitted to several friends that he had set fire to the apartment building, and traces of gasoline were found on the shirt the defendant wore on the night of the fire. The defendant presented "virtually" no defense. *Id.* at 453-454.

In his appeal from his first-degree murder conviction, the defendant argued that an instruction on involuntary manslaughter was justified by the evidence of the location where the fire started. He asserted that the evidence that the fire started on the

---

[11] Even if the test were sufficiency of the evidence to support the verdict, the only reason defendant could not prevail on the claim is tautological. Having asked for the instruction, where the evidence is more than sufficient to show he committed it, defendant will not be heard to say he did not. In point of fact and law, the evidence is *supportive* of the verdict in that it demonstrates defendant is guilty of at least the offense for which he was convicted; it does not support the verdict.

porch could lead the jury to infer that whoever set the fire acted without malice, but rather in an unintentional, grossly negligent manner. Such inference, the defendant concluded, would support conviction of the lesser included offense of involuntary manslaughter. *Id.* at 455.

In an opinion by Chief Justice BRICKLEY, a majority of the Court rejected the defendant's argument, and found there was no evidence adduced at trial supporting a conviction of involuntary manslaughter. The form of involuntary manslaughter at issue in *Edwards* included, inter alia, the negative elements of a defendant acting without malice, and committing an unlawful act not naturally tending to cause death or great bodily harm. *Id.* at 477. No evidence had been presented by the defendant, however, tending to negate either the existence of malice, or that the criminal act of setting the fire naturally tended to cause death or great bodily harm. All that was available to the jury was the opportunity to reject the uncontested evidence of a wilful and malicious act of arson, which naturally tends to cause death or great bodily harm, and engage in "pure speculation" that the defendant accidentally started the fire. We found the lack of evidentiary support for the defendant's contentions violative of the requirement that "[t]here must be some evidence on the record to support the elements of the requested lesser included (cognate) offense. . . . [T]here is no way of separating uncontested evidence of an intentional act of arson from a theory of unintentional death." *Id.* at 480.

We contrasted the lack of evidence supporting *Edwards'* theory with *People v Roeder*, 79 Mich App 595; 262 NW2d 872 (1977), in which a lesser included

offense instruction was justified by the evidence. In *Roeder*, the defendant, charged in the death of her two children with felony murder, presented evidence that she may have started the fire that killed her children by emptying an ashtray into a wastebasket, and that she attempted to rescue the decedents. "The defendant's testimony tended to negate both malice and the existence of an act naturally tending to cause death or great bodily harm." *Beach, supra* at 478. We concluded:

> Where the evidence suggests only that the criminal act naturally tends to cause death or great bodily harm, an instruction on the lesser included offense of involuntary manslaughter is simply not justified. [*Id.*]

In the present case, as in *Beach*, we must determine if the defendant has done more than merely invite the jury to engage in "pure speculation" that defendant's admitted blow to the decedent's side was not a legally proximate cause of decedent's death. In order for instruction on the lesser offense of assault with intent to do great bodily harm less than murder to be justified by the evidence, there must be some evidentiary basis on the record for the jury to conclude, first, that the defendant did not cause decedent's death, and, second, that defendant did not act with malice. Like the defendant in *Beach*, defendant in this case presented no evidence that his acts did not cause the victim's death. Further, while his testimony may have negated the "intent to kill" prong of malice, it did not create an issue of fact with respect to the nonexistence of an act naturally tending to cause death or great bodily harm. *Beach, supra* at 477. Where there is no such evidence on the record,

the defendant has caused a greater harm for which instruction on the lesser crime is inappropriate. Disposition of the present case turns then, on a determination whether defendant's evidence of alleged kicks, administered by decedent's brother while decedent lay collapsed in the hallway as a result of the blow inflicted by the defendant, was sufficient to create an issue of fact regarding malice, to suggest a proximate cause of decedent's death, and to permit the factfinder to conclude that an independent, intervening cause cut off defendant's criminal liability for decedent's death. Instruction on the lesser offense without such evidence would be a distortion of the desired rationality of the fact-finding process that we rejected in *Beach.*

> "The element [this] Court . . . found essential to a fair trial was not simply a lesser included offense instruction in the abstract, but the enhanced rationality and reliability the existence of the instruction introduced into the jury's deliberations. Where no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process." [*Beach, supra* at 480-481, quoting *Spaziano v Florida,* 468 US 447, 455; 104 S Ct 3154; 82 L Ed 2d 340 (1984).]

See also *People v Mills,* 450 Mich 61, 81-82; 537 NW2d 909 (1995), modified and remanded 450 Mich 1212 (1995) (A trial court is not required to provide the jury with an instruction requested by a defendant where the record is devoid of any evidence supporting such an instruction).

The dissent's reading of *Ora Jones* disregards the clarification and evolution of the cognate law of lesser included offenses since 1975 and overlooks the fact that in *Ora Jones,* there was evidentiary support

for the cognate offense. Moreover, contrary to Chief
Justice BRICKLEY's analysis in *Beach*, the dissent ana-
lyzes the evidentiary issue as if the question were
merely whether the evidence was sufficient to sup-
port the verdict in the face of a challenge to insuffi-
ciency, rather than whether the offense requested
would promote rationality in the deliberative process.
Where a defendant admits felonious intent and does
not furnish a basis for a reasonable jury to find that
the act was not the cause of death, *People v Pouncey*,
*supra*, the jury should not be charged with cognate
offenses that permit a finding of nonculpability for
the death.

E

In assessing criminal liability for some harm, it is
not necessary that the party convicted of a crime be
the sole cause of that harm, only that he be a contrib-
utory cause that was a substantial factor in producing
the harm. The criminal law does not require that
there be but one proximate cause of harm found.
Quite the contrary, all acts that proximately cause the
harm are recognized by the law.

> If a certain act was a substantial factor in bringing about
> the loss of human life, it is not prevented from being a
> proximate cause of this result by proof of the fact that it
> alone would not have resulted in death, nor by proof that
> another contributory cause would have been fatal even
> without the aid of this act. [Perkins & Boyce, Criminal Law
> (3d ed), p 783.]

In *Holsemback v State*, 443 So 2d 1371, 1381-1382
(Ala Crim App, 1983), the Court of Criminal Appeals
of Alabama considered the separate arguments of two
defendants, each of whom had inflicted knife wounds

on and had been convicted of the murder of a single decedent. Each defendant argued that because the other had been convicted of the crime, and they had not acted in concert, they could not be convicted of murder. In rejecting the defendants' contentions, the court observed that "[t]o render a defendant guilty, it is not necessary that the blow given by him, or his wrongful act, was the sole cause of death. Even if the blow or act was only a partial cause accelerating death, the defendant is nevertheless guilty." *Id.* at 1382 (citation omitted). The court analyzed the issue presented through quotation from Wharton, Homicide, § 44 (1907):

> "Two persons acting independently may contribute to the death of another, so that each will be guilty of the homicide . . . . And where a fight occurred between two persons, and a third took part in it in favor of one of them, and both inflicted injuries upon the other by blows and kicks, and the latter died, the cause of death being a rupture of an artery in the head caused by the blows or kicks received from them, both are to be regarded as equally guilty of causing death." [*Holsemback* at 1381.]

See also *United States v Hamilton*, 182 F Supp 548, 550-551 (D DC, 1960).

Where an independent act of a third party intervenes between the act of a criminal defendant and the harm to a victim, that act may only serve to cut off the defendant's criminal liability where the intervening act is the sole cause of harm. Perkins & Boyce, *supra* at 784; *People v Elder*, 100 Mich 515; 59 NW 237 (1894) (The trial court erroneously instructed the jury that it could find the defendant guilty of manslaughter for knocking the decedent to the ground and putting him in a position in which he

could be kicked by a third party, even if the kick was the sole cause of death and there was no concert of action between the assailants).

> If the deceased died of the combined effect of a wound inflicted with malice and of a disease disconnected from the wound, the accused is guilty. An intervening cause must be the efficient cause of death, or at least more than a contributing cause, before the accused in [sic] not guilty for such reason. [*Houston v State*, 70 So 2d 338, 339 (Miss, 1954).]

For the same reason, the contributory negligence of a decedent will not exonerate a defendant of criminal responsibility, where the defendant's negligence is a proximate cause of the decedent's death, *People v Tims*, 449 Mich 83; 534 NW2d 675 (1995). These classic principles dictate that the defendant was not entitled to an instruction on assault with intent to murder absent a factual foundation for a finding by the jury that the intervening act was the sole cause of the harm.

The present case may be analogized to those cases in which a defendant claims that his criminal liability for inflicting a nonmortal injury on a victim should be relieved as a result of negligent medical treatment interceding between the injury and the decedent's death. In those cases, it is only where there is evidence that the medical treatment was grossly negligent that such treatment may be considered as an intervening cause of death, cutting off the defendant's liability.

> Defendant cannot exonerate himself from criminal liability by showing that under a different or more skilful treatment the doctor might have saved the life of the deceased and thereby have avoided the natural consequences flowing

from the wounds. *Defendant was not entitled to go to the jury upon the theory claimed* unless the medical treatment was so grossly erroneous or unskilful as to have been the cause of the death, for it is no defense to show that other or different medical treatment might or would have prevented the natural consequences flowing from the wounds. [*People v Townsend*, 214 Mich 267, 279; 183 NW 177 (1921) (emphasis added).]

In the medical treatment setting, evidence of grossly negligent treatment constitutes evidence of a sole, intervening cause of death. Anything less than that constitutes, at most, merely a contributory cause of death, in addition to the defendant's conduct. Similarly, in the present case, in order to justify submitting to the jury the issue whether defendant should be convicted of assault with intent to do great bodily harm less than murder, the record must contain some evidence that an injury inflicted on the decedent after the defendant's attack constituted a sole, intervening cause of death. Defendant relies on the evidence of kicks administered by decedent's brother as sufficient for this purpose.[12]

F

We find that defendant failed to introduce evidence that defendant's acts were not a legally recognizable cause of decedent's death. We thus hold that instruction on the lesser included offense of assault with intent to do great bodily harm less than murder was unwarranted.

---

[12] Although the trial court instructed the jury on the element of causation, we do not find such instruction to be dispositive of the issue whether evidence of a superseding cause was presented at trial.

Defendant acknowledged, and in fact testified, that he inflicted a blow to decedent's left side with a baseball bat, and that decedent received assistance to enter the apartment building after being struck. After the blow was received, and before any alleged intervening assault on the decedent, defendant's witness testified that she saw the decedent collapse in the apartment building hallway. The stipulated findings of the medical examiner, that "decedent died of blunt force injuries," are consistent with the injuries admittedly inflicted on the decedent by the defendant. While defendant presented testimony of independent kicks administered to the decedent by his brother, the defendant failed to introduce evidence from which the jury could rationally find that the decedent died solely as a result of the second assault. Dispositively, defendant presented no evidence of the injuries that could have resulted from those kicks. Instead, defendant merely presented evidence of a possible additional, contributory cause of the decedent's death.

At the time of jury deliberation, there was an evidentiary void precluding defendant's lesser included offense instruction. The jury had been presented with an admission by the defendant that he had inflicted blunt-force injuries on the defendant, consistent with the injuries that caused death, and that the blows administered by the defendant caused serious injuries leading to decedent's collapse shortly before death.[13] The jury also had before it contested evidence of a

---

[13] Witness Gerald Coutier testified that he thought the decedent was intoxicated when Coutier observed him in the apartment building hallway, but acknowledged on cross-examination that his conclusion was based solely upon seeing the decedent collapsed in the hallway. Defense counsel acknowledged at sentencing that there was "[a]bsolutely nothing to indicate [the decedent] was intoxicated."

second blunt-force injury, administered after the decedent had been seriously injured by the defendant, that the jury could infer may have contributed to decedent's death. Contribution to death by the second injury, however, is not enough to cut off defendant's criminal liability for the death that occurred. Even if defendant's act alone would not have resulted in death, his action stood, uncontested, as a legally cognizable factor in bringing about the harm unless there was some evidence that the second alleged assault was the sole cause of death. Although defense counsel argued in his closing statement that the alleged kicks represented possible evidence of an independent intervening cause, and that the jury had insufficient evidence that either assault could have caused the injury leading to death, opening and closing statements are not evidence, and suggestion of defendant's theory in such statements "does not provide the supportive evidence needed to warrant a jury instruction of the same." *Mills, supra* at 82, n 15.[14] The jury was left to engage in "pure speculation" that only the kicks from the decedent's brother, inflicted in front of witnesses while his brother was exhorting the decedent to "come on, get up," caused the decedent's death. Such speculation, unsupported by any evidence on the record, fails to meet the requirements for cognate lesser included offense instruction. There was simply no way for the jury to separate the uncontested evidence of defendant's assault and decedent's

---

[14] Defense counsel's argument at closing, in which he acknowledged that the blows inflicted by the defendant were hard enough to "do some damage" and that the decedent was "in bad shape" at the time he was kicked, are arguably consistent with our conclusion that defendant's actions constituted a proximate cause of decedent's death.

condition as a result from defendant's theory of death solely resulting from an independent cause. Defendant's denial of a specific intent to cause death did not constitute evidence negating the malice necessary for second-degree murder, and defendant offered no evidence that his acts were not the proximate cause of death. As in *Beach, supra* at 480, a disbelief of the evidence regarding cause of death "leaves no evidence at all—only speculation."

### III

Defendant failed to present any evidence that his assault of the decedent with a baseball bat did not constitute a proximate cause of decedent's death. Because defendant's act stood uncontested as a cause of such harm, the defendant failed to present evidence warranting instruction on the lesser included offense of assault with intent to commit serious bodily harm less than murder, an assaultive offense inappropriate where defendant's acts caused the death of another. We therefore reverse the decision of the Court of Appeals, and remand to that Court for consideration of the remaining issues raised by the defendant in the Court of Appeals, but not addressed in its opinion.[15]

RILEY, MALLETT, and WEAVER, JJ., concurred with BOYLE, J.

CAVANAGH, J. I dissent from the majority's conclusion that the trial court properly refused to instruct the jury regarding the cognate lesser included offense of assault with intent to do great bodily harm less

---

[15] To the extent our holding in this case is inconsistent with our holding in *Boles, supra,* we overrule that holding.

than murder. If the defendant had initially been charged only with that assault offense, he could have been convicted because the evidence adduced at trial would have supported a conviction. The majority's analysis of the causation issue and its effect on the resolution of the issue before this Court ignores the import of the rule that this Court established in *People v Ora Jones*, 395 Mich 379; 236 NW2d 461 (1975).[1] The refusal to instruct in this instance was not harmless error, and requires reversal.

### I. REQUESTED INSTRUCTION WAS IMPROPERLY REFUSED

I agree with the majority's conclusion that the defendant correctly categorizes assault with intent to do great bodily harm less than murder as a cognate lesser included offense to the principal charged offense of second-degree murder. Further, I agree with the majority's recitation of the rule explaining when cognate lesser included offense instructions are required to be given. However, I do not agree with the majority's conclusion that, in this case, the trial court properly refused the requested instruction regarding the assault offense.

*Ora Jones* and its progeny have conclusively provided when a cognate lesser included offense instruction must be given:

> The duty of the trial judge to instruct on lesser included offenses is determined by the evidence. If evidence has

---

[1] The majority criticizes our adherence to the rule in *Ora Jones*, stating that we disregard the clarification and evolution of the law of lesser included offenses since it was decided. We acknowledge that the law in this area has evolved; however, no post-1975 cases have eroded the rule established in *Ora Jones* to an extent that we would consider the disputed instruction improperly given.

been presented which would support a conviction of a lesser included offense, refusal to give a requested instruction is reversible error.

*     *     *

In the area of "cognate" lesser offenses, the evidence in each case adduced at the particular trial must be examined to determine whether that evidence would support a conviction of the lesser offense. . . .

[If] the evidence adduced at trial would have supported a guilty verdict on the [requested] offense . . . , the trial court was required to accede to defendant's request to instruct the jury that such offense was a lesser included offense of the charge of second-degree murder. [*Id.* at 390 (citations omitted).]

Thus, in this case, the proper inquiry is whether the evidence adduced at trial would have supported a conviction for the assault offense. The majority only should have looked at the elements of the assault offense and the evidence adduced at trial when determining whether that threshold was met.

In order to convict a defendant of assault with intent to do great bodily harm less than murder, the prosecution must prove the elements of that crime beyond a reasonable doubt. As noted by the majority, the elements of that offense are "(1) an assault, i.e., 'an attempt or offer with force and violence to do corporal hurt to another' coupled with (2) a specific intent to do great bodily harm less than murder." See part II(B), *ante*, pp 668-669 (citation omitted).

In the instant case, the prosecution introduced evidence that an assault occurred. At trial, even the defendant admitted that he hit Mr. Peoples twice with a bat. The only other relevant question then becomes whether evidence was introduced at trial from which

the jury could infer that the defendant acted with the specific intent to do great bodily harm less than murder.

At trial, the prosecution's theory was that the defendant possessed the requisite intent for second-degree murder.[2] More specifically, in closing argument the prosecutor argued: "By striking [Mr. Peoples], [the defendant] put him in such danger of great bodily harm, the reasonable likelihood of which is going to be death." In contrast, the defense's theory was that the defendant did not intend to kill Mr. Peoples, nor did he intend to cause him great bodily harm: the defendant testified that he did not intend to kill Mr. Peoples, and that his intent in hitting him with a bat was "[j]ust to hit him."

As stated in *People v Mack*, 112 Mich App 605, 611; 317 NW2d 190 (1981) (citation omitted), "[t]he specific intent necessary to constitute the offense may be found in conduct as well as words." Similarly, the jury may infer the defendant's specific intent from the circumstantial evidence. *People v Eggleston*, 149 Mich App 665; 386 NW2d 637 (1986), citing *People v Vicuna*, 141 Mich App 486; 367 NW2d 887 (1985). The key point is that the jury could have rejected both theories and instead found, considering the surrounding circumstances, including the number and location of the blows, that the defendant acted with the specific intent to do great bodily harm less than murder when he struck the decedent with the bat.

---

[2] As the majority noted, the requisite intent for second-degree murder is the intent to kill, intent to inflict great bodily harm, or intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm. Part II(B).

Even though a finding of that intent would support the requisite intent for second-degree murder, it would also support the requisite intent for the assault offense. However, it is important to recognize that it was solely the jury's responsibility to decide whether to convict the defendant of one crime or the other.[3] By refusing to instruct regarding the assault offense, the trial judge precluded the jury from determining that the defendant was guilty of that offense, and not of homicide.[4] Because the evidence adduced at trial would have supported a conviction for the assault

---

[3] In *People v Chamblis*, 395 Mich 408, 420-421; 236 NW2d 473 (1975) (citations omitted; emphasis added), this Court noted:

> The jury is the sole judge of all of the facts presented. It may choose to believe or disbelieve any or all of the evidence. That is the essence of the right to a jury trial. *To speak of a requirement that the jury "justify" its conclusion that the defendant is not guilty of the higher charge before "allowing" it to convict of the lesser is antithetical to the nature of a jury trial.*

> *            *            *

> "It is the policy of the law to allow juries a latitude which is not hemmed in by absolute logic. Many considerations enter into a jury's verdict which cannot be itemized and weighted in a chart of legal instructions. A jury is expected to stay within the bounds of reason, yet they may indulge tender mercies even to the point of acquitting the plainly guilty. *Similarly they may, on almost any excuse, convict of a lower degree of crime although conviction of a higher degree is clearly warranted.*"

[4] As stated in *Chamblis*:

> Directed verdicts of guilt in criminal jury trials are forbidden by the Sixth and Fourteenth Amendments:

> "Once a plea of not guilty is entered, the defendant 'has an absolute right to a jury determination upon all essential elements of the offense. This right, emanating from the criminal defendant's constitutional right to trial by jury, is neither depleted nor diminished by what otherwise might be considered the conclusive or compelling nature of the evidence against him . . . . [F]*urthermore, in a situation wherein an understandingly tendered waiver is not forthcoming from the defendant, under no circumstances may the trial*

offense, the trial court was required to accede to the defendant's request for the assault instruction. Failure to do so was error requiring reversal.

The trial judge's refusal to give the requested assault instruction was not harmless error because the jury did not convict the defendant of the charged offense of second-degree murder. Instead, the jury chose to convict him of the cognate lesser included offense of voluntary manslaughter. Thus, we are uncertain whether the jury possibly would have convicted him of the assault offense rather than voluntary manslaughter had that instruction been given.

## II. CAUSATION ISSUE IS IRRELEVANT

The analysis of the majority opinion began with the recitation of the *Ora Jones* rule and should have ended with the conclusion that evidence would have supported a guilty verdict for the assault offense. The causation issue presented by the facts in the instant case is irrelevant to the determination whether the requested assault instruction should have been given.[5]

---

*court usurp this right by ruling as a matter of law on an essential element of the crime charged.' "*

Because the jury is the sole judge of *all* the facts, it can choose, without any apparent logical basis, what to believe and what to disbelieve. What may appeal to the judge as "undisputed" need not be believed by a jury.

*"When [defendant] exercised his constitutional right to a jury, he put the government to the burden of proving the elements of the crimes charged to a jury's satisfaction, not to ours or to the district judge's."* [*Id.*, n 3 *supra* at 420-421 (citations omitted; emphasis added).]

[5] As stated in *Chamblis*, n 3 *supra* at 415, "[n]either the defense nor the prosecution has the option of precluding the court from carrying out [its duty to instruct the jury with respect to the law applicable to the case] in hopes of forcing an 'all or nothing' verdict."

By launching into the causation issue and then using that analysis to conclude that the instruction was properly refused, the majority essentially held that it was permissible for the trial judge to usurp the jury's determination of all essential elements of the offense. However, as this Court has stated on numerous occasions, the jury could choose to believe or disbelieve any or all the evidence.[6] Thus, there is no support for the majority's statement that

> it is neither necessary nor sound policy to require the trial court to blind itself to uncontroverted proof of an element of the greater crime that would necessarily raise a defendant's culpability to that of the more serious crime, if all elements common to the two offenses were found to be proven beyond a reasonable doubt. Where a defendant admits activity that, as a matter of law, constitutes proof of the distinguishing element, [here, death] the basis for instruction on the lesser crime evaporates. [Part II(C), *ante*, p 671.]

Further, a prior decision[7] of a similar issue by this Court does not support the majority's conclusions that

---

[6] The majority states that the defendant did not present any evidence to permit the jury to determine that he did not act with malice or that his act was not the cause of decedent's death. See *ante*, p 671, n 10. That is incorrect. First, at trial, the defendant testified that his only intent was to hit the decedent. He testified that he did not intend to kill the decedent. If the jury chose to believe the defendant, it could have found that he did not act with malice. Second, at trial, there was testimony elicited from a defense witness that the decedent's brother kicked the decedent twice in the left side *after* the defendant hit the decedent with a bat. Thus, if the jury chose to believe that testimony, it could have found that the defendant was not the cause of the decedent's death.

[7] I do not agree with the majority's decision to reverse *People v Boles*, 420 Mich 851; 358 NW2d 894 (1984), to the extent that its instant holding is inconsistent with it. Rather, I would reaffirm our decision in *Boles*, because that is what *Ora Jones* requires. Further, I note that our decision

[i]f [death] has occurred, and the defendant's admitted act constitutes a legally cognizable cause of the death, instruction of the jury regarding crimes not intended to punish acts causing such an egregious result are logically precluded. At the point a court has before it uncontested evidence that a criminal homicide has been caused by a defendant's acts, there is no justification for instruction on merely assaultive offenses. *If a lesser cognate instruction is to be justified in such an instance, there must be some evidentiary basis for the jury to conclude that the causation chain leading from the greater harm back to defendant's admitted acts has been broken by an independent, intervening cause.* [Part II(C), *ante*, pp 671-672 (emphasis added).]

By focusing on whether the defendant presented evidence of an independent, intervening cause of the decedent's death, the majority does not remain faithful to the rule announced in *Ora Jones*. According to *Ora Jones*, the instruction should have been given because the jury could have found the defendant guilty of the assault offense on the basis of the evidence presented at trial. Evidence was presented that an assault occurred, as well as evidence from which the jury could have inferred that the defendant acted with the specific intent to do great bodily harm less than murder.

Additionally, although the majority seems to acknowledge that this Court rejected a similar argument in *People v Chamblis*, 395 Mich 408; 236 NW2d

in *Boles* clearly mandates the giving of the requested instruction in this case, because that result was also required in *Boles*, even though in that case the defendant was clearly the cause of the decedent's death. In fact, the defendant presented the defense of self-defense. Additionally, in *Boles*, the defendant's acts were the only possible cause of the decedent's injuries that caused death. There was no other actor or factor involved that could have been the cause of the decedent's death.

473 (1975), it does not analyze this case in conformity with that decision. As noted by the majority, in *Chamblis*, "this Court rejected an inquiry into the evidence adduced at trial that would direct a trial court to determine if 'there is evidence which would *justify the jury* in concluding that the greater offense was *not* committed and a lesser included offense was committed.' " Part II(C), *ante*, p 670. However, this is exactly the force of the majority's analysis. In this case, the majority opines that assault instructions should not be given when the victim dies as a result of the assault, because there is no evidence that would justify the jury concluding that some homicide offense was not committed. Thus, I do not endorse the majority's analysis, and instead prefer to remain faithful to *Chamblis*, which "favored allowing greater jury discretion to bring in any verdict it deemed just by inquiring simply whether the evidence adduced at trial would support a guilty verdict on the lesser charge, had defendant only been charged on the lesser offense." *Id.*

### III. CONCLUSION

The court's refusal to instruct the jury regarding the cognate lesser included offense of assault with intent to do great bodily harm less than murder was error requiring reversal. The refusal removed an appropriate lesser offense from the jury's consideration. Because the jury chose to acquit the defendant of the charged offense of second-degree murder and instead convicted him of another lesser included offense, the error was not harmless. Thus, I would affirm the holding of the Court of Appeals and remand for a

new trial, in which the trial court should be required to give the assault instruction if requested.

Brickley, C.J., and Levin, J., concurred with Cavanagh, J.

Levin, J. (*dissenting*). I have signed Justice Cavanagh's dissenting opinion.

I write separately to express my disagreement with the majority's redefinition of the crime of assault with intent to do great bodily harm less than murder.

The majority states that the Legislature did not intend, where the victim of an assault with intent to do great bodily harm dies, that the jury be instructed respecting the offense of assault with intent to do great bodily harm less than murder.[1] The majority reaches this conclusion by "necessary implication,"[2] citing no authority other than that perception.

The majority acknowledges that assault with intent to do great bodily harm less than murder is a cognate lesser offense of second-degree murder,[3] and that this cognate offense is of the same class or category as

---

[1]  By necessary implication, the crime of assault with intent to do great bodily harm less than murder presupposes that the assailant's act has not caused the death of the victim. If such harm has occurred, and the defendant's admitted act constitutes a legally cognizable cause of the death, instruction of the jury regarding crimes not intended to punish acts causing such an egregious result are logically precluded. At the point a court has before it uncontested evidence that a criminal homicide has been caused by a defendant's acts, there is no justification for instruction on merely assaultive offenses. If a lesser cognate instruction is to be justified in such an instance, there must be some evidentiary basis for the jury to conclude that the causation chain leading from the greater harm back to defendant's admitted acts has been broken by an independent, intervening cause. [*Ante,* pp 671-672.]

[2]  *Id.,* p 671.

[3]  *Id.,* p 669.

the principal charge within the meaning of *People v Hendricks*, 446 Mich 435; 521 NW2d 546 (1994), but nevertheless adds an ipse dixit that where the defendant's acts were a cause in fact of a criminal homicide "there is no justification for instruction on merely assaultive offenses."[4]

I

The jury was instructed that it might find Bailey guilty of second-degree murder if it found that he intended to do great bodily harm to Charles Peoples and Peoples died.

The judge had found that there was sufficient evidence that Bailey acted on adequate provocation in the heat of passion to justify an instruction on voluntary manslaughter. The jury was so instructed, and found Bailey guilty of voluntary manslaughter. He was sentenced to serve five to fifteen years.

In refusing an instruction on assault with intent to do great bodily harm less than murder, the court precluded the jury from finding an admittedly cognate lesser offense of second-degree murder that carries a maximum penalty of ten years.[5]

Where there is no evidence that the defendant acted on adequate provocation in the heat of passion, but there is, as here, evidence that the defendant did not intend to kill, the defendant would ordinarily be entitled to an instruction on involuntary manslaughter

---

[4] *Id.*, pp 671-672.

[5] The likelihood is that if the judge had instructed on this cognate lesser offense, and the jury had convicted Bailey of that offense, the sentence would have been five to ten years rather than five to fifteen years for voluntary manslaughter. Bailey's earliest date of release would be the same.

for grossly negligent conduct in inflicting an injury in excess of that intended.

Nevertheless, the Legislature has decided that there shall be an offense less than either second-degree murder or manslaughter dubbed assault with intent to do great bodily harm less than murder, carrying a maximum ten-year penalty rather than the fifteen-year maximum for manslaughter.

Since a jury is not instructed that it must convict a person of second-degree murder if it finds that he intended to cause great bodily harm and death resulted, there is no reason why a jury, unwilling to find the requisite malice (from the intent to do great bodily harm) to support a conviction of second-degree murder, should be left with no alternative choice other than acquittal unless it finds the requisite elements to convict the defendant of manslaughter.

It is within the province of the jury, as trier of fact, to conclude that, although the defendant intentionally committed great bodily harm that resulted in death, he is not a murderer or manslaughterer, and, accordingly, acquit him of second-degree murder, reject manslaughter, and convict him of assault with intent to do great bodily harm less than murder. That is at least as logical as the majority's assumption that the Legislature did not intend, where the victim dies, that there be an instruction on assault with intent to do great bodily harm.[6]

---

[6] *Id.*

II

The prosecutor has not argued that a jury should not be instructed on assault with intent to do great bodily harm if the victim dies. The prosecutor's argument in this Court is that the jury should not be so instructed where a rational view of the evidence indicates that the accused is guilty of second-degree murder. The majority correctly rejects the prosecutor's argument that Michigan "adopt a rational view of the evidence approach to included offenses . . . ."[7]

The majority thus casts a new spin on the elements of assault with intent to do great bodily harm less than murder without the benefit of briefing of counsel.

The argument that assault with intent to do great bodily harm less than murder should not be given where the victim dies was the view espoused by the Court of Appeals in *People v Boles*, 127 Mich App 759, 771; 339 NW2d 249 (1983). This Court, after issuing an order to show cause to the prosecutor,[8] reversed *Boles* by order.[9] After at least two conference discussions, that order of reversal of the Court of Appeals was entered without dissent even by the author of the majority opinion in the instant case. Three other members of the present Court[10] joined in the unanimous order along with three who are no longer members of the Court.[11]

---

[7] *Id.*, p 667.

[8] Unpublished order entered May 25, 1984 (Docket No. 72499).

[9] 420 Mich 851 (1984).

[10] Justices BRICKLEY, CAVANAGH, and LEVIN.

[11] Justices WILLIAMS, KAVANAGH, and RYAN.

III

Regardless of how one thinks this case should be decided on the merits, the majority's opinion is disturbing because it appears to alter the law without bringing the change to the reader's attention.[12] The majority portrays its decision as consistent with prior cases in which this Court has addressed the question when an instruction on a lesser included or cognate lesser included offense is necessary.

The majority relied primarily on four cases: *People v Stephens*, 416 Mich 252; 330 NW2d 675 (1982), *People v Beach*, 429 Mich 450; 418 NW2d 861 (1988), *People v Pouncey*, 437 Mich 382; 471 NW2d 346 (1991), and *People v Hendricks, supra.* It maintains that these cases have "developed and refined"[13] the law in this area since this Court announced in 1975 in *People v Ora Jones*, 395 Mich 379, 390; 236 NW2d 461 (1975),[14] that, "[i]n the area of 'cognate' lesser offenses, . . . [if] the evidence adduced at trial would have supported a guilty verdict on the [requested] offense . . . , the trial court [i]s required to accede to defendant's request to instruct the jury that such offense [i]s a lesser included offense of the charge of second-degree murder."

While these cases may have "developed and refined" the law in the sense that they applied the dictates of *Ora Jones* and *People v Chamblis*, 395 Mich 408; 236 NW2d 473 (1975), to factually distinguisha-

---

[12] The majority acknowledges the effect of its opinion in a footnote following the very last word of the opinion. It states, "To the extent our holding in this case is inconsistent with our holding in *Boles, supra,* we overrule that holding." *Ante,* p 682, n 15.

[13] *Ante,* p 667.

[14] *Id.,* pp 667-668.

ble scenarios, nothing in the cited opinions discredits the view expressed in *Chamblis* (cited in the *Boles* order) that "[t]he fact that the evidence would also support conviction of the greater charged offense does not preclude the giving of the lesser included instruction." *Id.* at 423.

In *Stephens*, this Court eliminated the misdemeanor cutoff rule set forth in *Chamblis*. As stated in footnote 9 of *Stephens*, this Court's decision in that case did not alter the state of the law concerning when an instruction should be given on a separate, lesser included felony charge.[15]

In *Beach* and its companion case, *People v Edwards*, both defendants sought instructions on cognate lesser offenses. This Court reaffirmed, as a general rule applicable in both cases, that when evidence is presented that would support the requested charge, an instruction is required.[16] Applying that proposition, the Court held in *Edwards* that an involuntary manslaughter instruction need not have been given because the defendant failed to present sufficient evidence that the act committed by him that caused the victim's death was not a felony or of the type that does not naturally tend to cause death.[17] The Court found that there was error in *Beach*, concluding that "there was sufficient evidence to warrant the lesser

---

[15] *Id.* at 258, n 9.

[16] 429 Mich 464-465.

[17] This Court has partially defined involuntary manslaughter as " 'the unintentional killing of another without malice in . . . the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm.' " *Beach*, 429 Mich 477, quoting *People v Richardson*, 409 Mich 126, 135-136; 293 NW2d 332 (1980).

included offense instruction of conspiracy to commit larceny in a building . . . ."[18]

· Similarly in *Pouncey*, defendant sought a voluntary manslaughter instruction. The Court reaffirmed that "if there is evidence which would support a conviction of the cognate lesser offense, then the trial judge, if requested, must instruct on it."[19] (This Court held that the judge's failure to give the instruction was not error because the defendant failed to show that he had acted in the heat of passion when he shot the victim or that he was adequately provoked, two of the elements required for voluntary manslaughter.)

Lastly in *Hendricks*, defendant sought an instruction on unauthorized driving away of an automobile as a cognate lesser offense of armed robbery. Again this Court, citing *Ora Jones*, reaffirmed that an instruction is required when the evidence presented would support the charge. The Court held that it was proper to deny the instruction, however, because the lesser offense was not " 'of the same class or category, [or] closely related' " to the originally charged offense.[20]

Returning to the test articulated in *Ora Jones* and reaffirmed in *Beach*, *Pouncey*, and *Hendricks*, the majority should have asked, assuming, as the majority concludes, that second-degree murder and the cognate lesser offense are in the same class or category of crimes, whether evidence was presented in this

---

[18] 429 Mich 481.

[19] *Id.* at 387.

[20] *Id.* at 451. Whether the lesser offense is "of the same class or category" is the second prong of the two-pronged test established in *Ora Jones* concerning when an instruction is proper for a cognate lesser included offense. 395 Mich 388.

case to support the requested cognate lesser included offense instruction.[21]

As the majority notes, the elements of assault with intent to do great bodily harm less than murder are: "(1) an assault, i.e., 'an attempt or offer with force and violence to do corporal hurt to another' coupled with (2) a specific intent to do great bodily harm less than murder."[22]

Sufficient evidence was introduced to show an assault (the defendant admitted he struck the victim with the bat) and the requisite intent (defendant testified that he intended to hurt the victim). The instruction should have been given.

---

[21] The majority cites *United States v Kerley*, 838 F2d 932, 938 (CA 7, 1988), for the proposition that jury nullification is a power and not a right. I do not dispute this statement, but comment only that nullification is not implicated here. *Kerley* did not involve the question under what circumstances an instruction should be given.

[22] *Ante*, pp 668-669, quoting *People v Smith*, 217 Mich 669, 673; 187 NW 304 (1922).