# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WALEED ALI AL-HAJAM,

Defendant-Appellant.

UNPUBLISHED
September 18, 2018

No. 337222
Wayne Circuit Court
LC No. 16-009344-01-FC

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant appeals his jury conviction of second-degree murder, MCL 750.317, as a lesser offense to an original charge of first-degree premeditated murder, MCL 750.316(1)(a). The trial court sentenced defendant to a prison term of 20-1/2 to 40 years' imprisonment. On appeal, defendant claims (1) he was denied the effective assistance of counsel, (2) he was denied due process because the prosecution withheld exculpatory evidence, and (3) there was insufficient evidence to convict him of second-degree murder on an aiding or abetting theory. We affirm.

Defendant's conviction arises from the shooting death of Ahsan Alwatan. Late in the evening on July 17, 2016, Alwatan drove his truck to a gas station in Detroit. Alwatan entered the gas station store while the passenger, Mohamed Munaser, stayed in the truck. Video surveillance recordings showed that after Alwatan entered the gas station, he talked to defendant, the attendant at the station. According to Munaser, Alwatan appeared angry or upset when he returned to the truck, and he then drove to another gas station across the street. Surveillance recordings from the first gas station showed defendant leaving the gas station store and using his cell phone shortly after Alwatan left the store. As Alwatan and Munaser were waiting to exit the second gas station lot and enter the roadway, a black Cadillac Escalade entered the gas station lot and stopped next to Alwatan's truck, with the drivers' windows adjacent to each other. With the driver-side window of each vehicle rolled down, the driver of the Escalade yelled at Alwatan and then fired several gunshots into Alwatan's vehicle. Alwatan was shot several times and his truck rolled into the roadway, crossed the street to the first gas station, and violently struck a pole near the gas station entrance. Alwatan died from his wounds. Surveillance recordings captured defendant waving his arm in the direction of Alwatan while he walked towards the two vehicles just prior to the shooting. The police discovered that multiple text messages and calls were exchanged between defendant and codefendant Ali Al-Jamilawi—the driver of the black

-1-

Escalade—shortly before and after the shooting.[1] The prosecutor's theory at trial was that Al-Jamilawi was the shooter and that defendant aided or abetted the shooting of Alwatan.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that a new trial is required because defense counsel was ineffective in several respects. We disagree.

Because defendant did not raise this issue in the trial court and this Court denied his motion to remand, our review is limited to errors apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied his right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Johnnie Johnson, Jr,* 451 Mich 115, 124; 545 NW2d 637 (1996).

Defendant argues that defense counsel was ineffective for not properly investigating the case and failing to call witnesses. "A defendant is entitled to have his counsel investigate, prepare and assert all substantial defenses," *People v Hubbard,* 156 Mich App 712, 714; 402 NW2d 79 (1987), and the failure to conduct a reasonable investigation can constitute ineffective assistance of counsel. *People v McGhee,* 268 Mich App 600, 626; 709 NW2d 595 (2005). To establish prejudice, a defendant must show that counsel's failure to interview a witness or conduct an adequate investigation resulted in counsel's ignorance of valuable evidence that would have substantially benefited the defendant. *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990). An attorney's decision whether to call a witness is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Counsel's "failure to call a witness can constitute ineffective assistance of counsel only when it 'deprives the defendant of a substantial defense.' " *Id.* (citation omitted).

The police obtained codefendant Al-Jamilawi's cell phone from his brother, Mohannad, after Al-Jamilawi left the country and went to Iraq. Defendant argues that defense counsel was ineffective for not investigating whether the police obtained a search warrant for that phone. As the prosecution points out, however, defendant lacks standing to challenge the seizure of Al-Jamilawi's phone. Any rights under the Fourth Amendment are personal and may not be asserted vicariously. *Alderman v United States*, 394 US 165, 174; 89 S Ct 961; 22 L Ed 2d 176 (1969). The fact that a defendant is harmed by the seizure of someone else's property does not confer standing on the defendant to object to that evidence, even when those involved are codefendants. *Id*. at 171-173. Accordingly, defendant cannot argue that defense counsel was ineffective for failing to investigate the legality of the seizure of Al-Jamilawi's phone.

---

[1] Al-Jamilawi was also charged in this matter, but he left the country before being arrested.

Defendant also claims that counsel was ineffective for not investigating Mohannad's statement to the police. Defendant does not explain how an investigation of Mohannad's police statement would have assisted his defense. Defendant has the burden of establishing factual support for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because defendant has not factually supported his claim that an investigation of Mohannad's statement would have been helpful to the defense, this claim cannot succeed.

Defendant also argues that defense counsel was ineffective for not investigating Darryl Stone and Mohamed Kassim as witnesses. The men were defendant's coworkers, and they were both present at the station on the night of the shooting. It is clear from the record that defense counsel was aware of these witnesses because they were listed on defendant's witness list, and counsel mentioned both men in his opening statement. However, neither witness was called at trial, and defendant has not provided witness affidavits or other offers of proof showing what information Stone or Kassim could have provided. Because defendant has not provided any factual basis for a finding that the potential witnesses had information that could have substantially benefited defendant at trial, he has not overcome the presumption that counsel declined to call these witnesses as a matter of trial strategy, and he has not established that he was prejudiced by counsel's failure to call either witness. Further, without an offer of proof showing what information these witnesses could have provided, defendant has not shown that remand for an evidentiary hearing is warranted.

Defendant also asserts that there were other employees or witnesses at the gas station who defense counsel failed to interview or call as witnesses, specifically claiming that there was an unknown male with Stone. However, defendant does not provide any other information to further his claim. Again, because defendant does not indicate what additional information these witnesses could have provided, he has not met his burden of demonstrating that he was prejudiced by counsel's failure to call them as witnesses, or shown that remand for an evidentiary hearing is warranted.

Defendant next argues that defense counsel was ineffective for mentioning in opening statement that defendant went to Iraq shortly after the shooting. Defendant argues that this information permitted the jury to draw an inculpatory inference that he left the country because of his consciousness of guilt for Alwatan's shooting death. We disagree.

The record discloses that defense counsel made the following remarks in his opening statement:

> Now, it [the lockbox] was meant to carry a weapon. Within the next day or so my client left the United States. So did AJ [the codefendant] and for a time my client will tell you he was in Iraq, Basra, and the proofs will show as far as anybody knows AJ's still there and he ain't coming back.
>
> My guy did and he was interviewed by the police. He didn't go very far. He came home. He moved back into the same home with his folks that he'd lived with before, his wife Marwa, and he took the same job that he had back when — he wasn't going anywhere.

It was reasonable for counsel to believe that information about defendant leaving the country after the offense would be presented to the jury, particularly if defendant testified. Indeed, the officer in charge testified about trying to track down defendant after he did not show up for work as scheduled. Although defendant elected not to testify, it is reasonable that counsel was laying the groundwork for defendant's potential testimony at the time of opening statement. Furthermore, counsel's remarks were intended to convey that, unlike Al-Jamilawi, who remained in Iraq, defendant returned to the United States, thereby indicating that he had nothing to hide. Viewed in context, defendant has not overcome the presumption that counsel's remarks were part of a reasonable trial strategy.

Defendant next complains that defense counsel failed to challenge "the arraignment on information/amended information, where there is no complaint and on what basses was [sic] used for arrest warrant. MCL 764.1(a)." Defendant appears to be claiming that there were procedural defects with the information. However, a procedural defect is not a basis for dismissal unless a defendant can demonstrate prejudice from the defect, e.g., that the information did not provide proper notice of the charge. See *McGhee*, 268 Mich App at 629. Because defendant does not explain how he was prejudiced by any alleged defect, he has not established that counsel was ineffective for not challenging the information or the amended information.

Defendant also argues that defense counsel was ineffective for not objecting to the trial court's instruction on aiding or abetting when aiding or abetting was not specifically alleged in the information or the amended information. However, the distinction between principals and accessories has been abolished, MCL 767.39, and thus aiding or abetting is not a distinct substantive offense. Rather, it is an alternative theory of guilt. *People v Robinson*, 475 Mich 1, 14-15; 715 NW2d 44 (2006); *People v Perry*, 460 Mich 55, 63 n 20; 594 NW2d 477 (1999). Therefore, the prosecution was permitted to pursue a theory of guilt under an aiding or abetting theory, and it was not necessary to charge defendant in any form other than as a principal. *People v Lamson*, 44 Mich App 447, 449-450; 205 NW2d 189 (1973). Because there was no legal basis for objecting to the aiding or abetting instruction, defense counsel was not ineffective for failing to object. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (counsel is not required to make a futile objection).

Finally, because defendant has not demonstrated any factual support for his ineffective-assistance claims, he is not entitled to a remand for an evidentiary hearing on this issue. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995); *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985).

## II. EXCULPATORY EVIDENCE

Next, defendant argues that a discovery violation denied him due process. We disagree. "This Court reviews de novo a defendant's claim of a constitutional due-process violation." *People v Jackson*, 292 Mich App 583, 590; 808 NW2d 541 (2011). A trial court's determination of an appropriate remedy for a discovery violation is reviewed for an abuse of discretion. *Id.* at 591.

Defendant argues that the prosecution withheld exculpatory evidence in violation of his right to due process. The Due Process Clause of US Const, Am XIV, prohibits the prosecution

from suppressing material evidence favorable to the defense. *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Fox (After Remand)*, 232 Mich App 541, 548-549; 591 NW2d 384 (1998). To establish a *Brady* violation, a defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence was material. *People v Chenault,* 495 Mich 142, 155; 845 NW2d 731 (2014). The prosecution bears responsibility for evidence within its control, even evidence unknown to it, and even where the nondisclosure was inadvertent and not intentional. *Id.* at 150.

MCR 6.201(B)(1) also provides that the prosecution, upon request, must provide the defendant with any exculpatory information or evidence. To be entitled to relief under MCR 6.201(J), a defendant must demonstrate that he was prejudiced by the discovery violation. *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997). A trial court has discretion to fashion an appropriate remedy for a discovery violation. MCR 6.201(J) provides:

> If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion.

"When determining an appropriate remedy for a discovery violation, 'the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances.' " *Jackson*, 292 Mich App at 591 (citation omitted). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

During trial, Mohannad Al-Jamilawi, the brother of codefendant Al-Jamilawi, testified that Al-Jamilawi left the country, but left his cell phone with Mohannad. The police later obtained the phone from Mohannad. During trial, it was disclosed that Mohannad was previously questioned under oath pursuant to an investigative subpoena issued by the prosecutor. A copy of Mohannad's investigative subpoena testimony had not been previously provided to defendant. Defense counsel objected when the prosecutor attempted to impeach Mohannad with his prior investigative subpoena testimony. As a remedy for this discovery violation, the trial court prohibited the prosecutor from using the investigative subpoena transcript when examining the witness. Defendant now argues that dismissal or a new trial should be granted because Mohannad's investigative subpoena testimony was exculpatory, and the prosecution's failure to timely produce the evidence violated his right to due process.

On appeal, the prosecution concedes that Mohannad's investigative subpoena transcript was at least inadvertently withheld from defendant. The prosecution also agrees that information in the transcript could potentially be considered exculpatory because Mohannad explained in that testimony that Al-Jamilawi's phone, which defendant called around the time of the shooting, was

used for marijuana transactions. The prosecution argues, however, that the information was not material to defendant's right to a fair trial. We agree.

In *Chenault*, 495 Mich at 150-151, our Supreme Court explained:

> To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." This standard "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . . . ." The question is whether, in the absence of the suppressed evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. [Citations omitted.]

Stated another way, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Chenault*, 495 Mich at 157 (quotation marks and citation omitted).

Defendant argues that Mohannad revealed in his investigative subpoena testimony that Al-Jamilawi's phone was a "community phone" that was used exclusively for marijuana transactions. Defendant contends that this information was exculpatory because it could have shown that he had a reason for calling Al-Jamilawi's phone near the time of the shooting that had nothing to do with arranging for Al-Jamilawi to confront and shoot the victim. However, defendant opted not to testify at trial, and he did not otherwise offer any evidence explaining the purpose of the communications between his phone and Al-Jamilawi's phone. He also did not argue below that any information in the investigative subpoena transcript was material to the defense theory of the case.

Defendant now suggests on appeal that the evidence could have been used to provide a potential alternative explanation for the purpose of his communications with Al-Jamilawi, i.e., to arrange a drug transaction, but without any actual evidence supporting this theory. Obviously, defendant would have been aware of the purpose of his own communications, so the investigative subpoena testimony evidence was not necessary to enable defendant to present evidence of this alternative purpose. Moreover, Mohannad testified at trial that the telephone was used only for drug sales. Despite this testimony, defendant never argued below that it provided an alternative explanation for his communications with Al-Jamilawi's phone. Against this backdrop, we reject defendant's argument that the investigative subpoena transcript was material to defendant's defense. Accordingly, defendant has failed to show that the untimely disclosure of the investigative subpoena testimony violated his right to due process.

As a remedy for the prosecution's failure to timely produce the investigative subpoena transcript, the trial court barred the prosecutor from using that transcript to impeach Mohannad's testimony at trial. Because defendant did not show that the transcript otherwise contained new

information material to his defense, the trial court's choice of remedy was not an abuse of discretion. *Jackson*, 292 Mich App at 591-592.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence at trial was insufficient to support his conviction of aiding or abetting second-degree murder. We disagree. In reviewing the sufficiency of the evidence in support of a conviction, we must view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). Any conflicts in the evidence must be resolved in favor of the prosecution. *Jackson*, 292 Mich App at 587-588.

Defendant was originally charged with first-degree murder. To convict a defendant of first-degree murder, the prosecution is required to prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberated. *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). The jury ultimately convicted defendant of second-degree murder, which consists of the following elements:

> (1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm. [*People v Bailey*, 451 Mich 657, 669; 549 NW2d 325 (1996), amended 453 Mich 1204 (1996).]

The prosecutor argued at trial that defendant was guilty under an aiding or abetting theory. To find that a defendant aided or abetted in a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999). An aider and abettor's state of mind may be inferred from all of the facts and circumstances of the crime. *Id*. Factors that can be considered include a close association between the defendant and the other participants, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Id*.

Defendant first disputes that there was sufficient evidence that he assisted in the commission of the crime. This argument is without merit. The circumstantial evidence showed that defendant was involved in a dispute or argument with the victim shortly before the shooting. Surveillance videos showed that as the victim abruptly left the gas station where defendant was working and drove to the gas station across the street, defendant used his cell phone. Evidence was presented that defendant made multiple calls or text messages to the alleged shooter, Al-Jamilawi, immediately before and after the shooting. When Al-Jamilawi arrived and confronted the victim while the victim was still at the gas station across the street, defendant could be seen

in the video footage waving his arm. Rather than assisting the victim and his passenger after the shots were fired and the victim's truck crashed into a pole, defendant ran inside the store and later refused entry to several people who were trying to assist the victim. Further, he later gave false statements to the police. Viewed in a light most favorable to the prosecution, the jury could have reasonably inferred from the flurry of communications between defendant and Al-Jamilawi that they were working together, that defendant had summoned Al-Jamilawi because of his argument with the victim moments earlier, and that defendant was waving his arm because he was expecting Al-Jamilawi to arrive and to signal the vehicle that Al-Jamilawi was to confront. This evidence was sufficient to enable the jury to find that defendant encouraged and assisted in the commission of the crime.

Defendant also argues that the evidence was insufficient to prove the third element of aiding and abetting—that he intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. In light of the evidence of the argument or heated discussion between defendant and the victim, defendant's communications with Al-Jamilawi both before and after the shooting, defendant's conduct in pacing around the gas station and waving his arm when Al-Jamilawi arrived, following which Al-Jamilawi shot the victim without provocation, and that defendant gave false statements to the police after the shooting, the jury could reasonably infer that defendant was directing Al-Jamilawi's actions, and thus had knowledge that Al-Jamilawi intended to shoot the victim.

Accordingly, the evidence was sufficient to support defendant's conviction of second-degree murder under an aiding or abetting theory.

Affirmed.

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel