*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DURICO EUGENE MOSES,

Defendant-Appellant.

UNPUBLISHED
February 26, 2019

No. 340747
Wayne Circuit Court
LC No. 17-003786-01-FC

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree murder, MCL 750.317. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 40 to 80 years' imprisonment. Defendant argues on appeal only that there was insufficient evidence of malice to support his second degree murder conviction, and *in propria persona* he also argues that there was insufficient evidence of identification. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of the death of defendant's girlfriend, whose body was found in a vacant parking garage on January 2, 2017, "slumped against one of the parking pillars." The officer in charge of the case noted that the victim's face was "unrecognizable due to severe blunt force trauma to her head, but [that] she had distinguishing marks." At trial, the medical examiner who performed an autopsy on the victim testified that the victim had suffered at least seven to eight serious blows to the head. The cause of the victim's death was inflicted blunt force trauma. The victim's clothing, however, was "neat" and "somewhat of value." Because the victim could not be identified, the police asked the local news to broadcast a description of the victim and the clothes that she was wearing. Later the same day, defendant's father, Larry

Moses,[1] with whom defendant resided, informed the police that defendant had confessed the killing to him.

At the time, defendant was in the hospital being treated for self-inflicted injuries. Larry explained at trial that he heard a knock at the back door of his home at approximately 7:00 a.m. on January 2, 2017, and discovered defendant lying on the ground without shoes on. Larry noticed blood on the screen portion of the door. At that time, defendant asked Larry to leave him alone. Larry later found defendant in his basement. Larry observed blood on the floor and in the basement, and scratches on defendant's neck. Larry summoned emergency medical services, who took defendant to the hospital. At approximately 3:00 p.m. the same day, while Larry was visiting defendant in the hospital, defendant told Larry that defendant and the victim got into an argument, defendant and the victim drove into a vacant parking garage at the end of a dead end street, and defendant killed the victim. While still at the hospital, Larry saw the news report about a body having been discovered in the vacant parking garage. Larry asked defendant if that was where defendant "dropped the body off," and defendant responded in the affirmative. Defendant also told Larry that defendant took his truck to the car wash to clean it, and defendant disposed of the weapon. However, defendant never told Larry about the type of weapon he used to kill the victim, and no weapon was ever recovered throughout the investigation.

Larry promptly informed the police, who arrested defendant at the hospital on the basis of Larry's statement. A search warrant was subsequently obtained for defendant's truck. During the investigation of the truck, suspected blood splatter was observed on the driver's side seat and door. Suspected blood was also discovered on shoes found in the truck bed, on the ceiling of the cap of the truck, and inside Larry's garage. The officer in charge also observed that defendant's truck bed was damp and filled with water, and that the area of the truck bed nearest to the truck's cab contained piles of dirt, which was "consistent with [the vehicle] being washed." Forensic swabs were taken the next day of suspected blood from the steering wheel, driver's door, driver's arm panel, cargo bed, floor mats, boots, a pipe, and a cigarette box in a vehicle. The blood swabs from the parking garage and the driver's side door of the truck matched only defendant's DNA profile, and the victim was excluded as a possible donor. In contrast, the blood swabs from defendant's truck bed matched only the victim's DNA profile, and defendant was excluded as a possible donor. No DNA profile was generated from the passenger's side door of defendant's truck.

Defendant was charged with open murder, MCL 750.316. The jury was given the option of finding defendant not guilty, guilty of first-degree murder, guilty of second-degree murder, or "guilty of the lessor [sic] offense of voluntary manslaughter." The jury found defendant guilty of second-degree murder. Defendant now appeals, contending that there was insufficient evidence of malice to support that conviction.

## II. STANDARD OF REVIEW

---

[1] For clarity, we will refer to defendant's father as "Larry."

This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The evidence is viewed "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. When reviewing a challenge to the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). It is the role of the jury as trier of fact "to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted).

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his second-degree murder conviction, alleging that the prosecution failed to prove that defendant killed the victim with malice. Defendant argues that because the prosecution failed to prove the requisite state of mind, this Court should reduce his conviction to voluntary manslaughter, and remand for resentencing. We disagree.

The elements of second-degree murder include (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v Smith*, 478 Mich 64, 71; 731 NW2d 411 (2007), citing *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). Malice "is the 'grand criterion' which elevates a homicide, which may be innocent or criminal, to murder," and it may be established by any of four mental states: intent to kill, intent to cause serious bodily injury, wantonly and willfully disregarding the natural likelihood that death or great bodily harm will ensue, or felony murder. *People v Aaron*, 409 Mich 672, 714-715; 299 NW2d 304 (1980) (footnotes and citations omitted). "The facts and circumstances of [a] killing may give rise to an inference of malice." *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999). "A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Id*.

"To show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012) (quotation marks and citation omitted). "The degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *People v Tierney*, 266 Mich App 687, 714-715; 703 NW2d 204 (2005) (quotation marks and citation omitted). "In order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Id*. (quotation marks and citation omitted). "The determination of what is reasonable provocation is a question of fact for the fact-finder." *Id*. (quotation marks and citation omitted). Although "[v]oluntary manslaughter shares all the elements of murder except the element of malice," voluntary manslaughter requires affirmative proof of reasonable provocation. *People v Parney*, 98 Mich App 571, 585; 296 NW2d 568 (1979). Reasonable provocation is not actually an element of voluntary manslaughter, but it is necessary to negate the presence of malice. See *People v Mendoza*, 468 Mich 527, 535-536; 664 NW2d 685 (2003).

We first observe that defendant has presented no evidence suggesting that defendant was subjected to reasonable provocation that prompted him to kill the victim in the heat of passion. According to Larry, defendant and the victim had a troubled relationship, which Larry described as being like "water and oil." According to Larry's testimony about defendant's confession, defendant drove into a vacant parking garage at the end of a dead end street and killed the victim because the two had an argument. Defendant told Larry that he "was tired of [the victim] arguing and screaming at him." Larry also testified that defendant and the victim had been dating for over a year, and that defendant told Larry that he was "depressed." The jury was instructed that it could find defendant guilty of voluntary manslaughter, and it declined to do so; by necessary implication, the jury found that defendant had not been reasonably provoked. The jury's finding was proper; indeed, we find that no reasonable jury could have found the above provocation sufficient to cause a reasonable person to lose control. See *Tierney*, 266 Mich App at 714-715. The evidence therefore does not support a conviction of voluntary manslaughter.

In contrast, the evidence at trial was sufficient for the jury to infer that defendant killed the victim with malice. The victim died of inflicted blunt force trauma, and sustained the vast majority of her injuries to her head, with multiple lacerations on her forehead, chin, and the back of her head. She also sustained contusions below her eyes, on her nose, and on her chin. The blunt force trauma was so severe that the victim's skull was exposed, and fragments of brain matter protruded from her injuries. Further, the victim's injuries distorted her face to the point where her face became nonsymmetrical. The police were compelled to broadcast descriptive information about the victim and the victim's clothing on the news because her injuries made her "unrecognizable." The sheer extent of the victim's injuries could not possibly have been accidental or unknowing, and thus at a minimum overwhelmingly imply that they were inflicted with the intent to cause great bodily injury. The jury is permitted to draw reasonable inferences. See *Carines*, 460 Mich at 759.

Consequently, we conclude that there was ample evidence in the record from which to find malice, and no evidence in the record from which to find reasonable provocation. The jury's conviction of second-degree murder is proper.

## IV. STANDARD 4 BRIEF

Defendant also argues, *in propria persona*, that that there was insufficient evidence to support his second-degree murder conviction because no witnesses saw defendant and the victim together when the victim was killed, the tire tracks found at the location where the victim's body was discovered did not match the tire tread on defendant's truck, Larry's trial testimony was untrue, and police Detective Brian Menge planted incriminating evidence. We disagree.

Initially, the lack of eyewitnesses is irrelevant because "circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *Solloway*, 316 Mich App at 180-181. As discussed above, the jury need not have engaged in any impermissible speculation to find defendant guilty of second-degree murder. See *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996). Furthermore, to the extent defendant's brief is substantively his own testimony on his own behalf, defendant waived his right to testify at trial on the record. Defendant is absolutely entitled to maintain his innocence. However, it is the role of the jury as trier of fact to hear and evaluate testimony. *Blevins*, 314

Mich App at 357. We are a court of record, and we will not consider any testimonial statements from defendant not in the record.

Defendant states in his brief, "[f]act is, my tire tracks were not found [at the vacant garage]." Defendant emphatically repeats that tire tracks at the scene were not his. We cannot determine the significance of this argument, because no evidence was advanced at trial suggesting that the tire tracks *were* from defendant's truck. Defendant's statement that the tire tracks do not match the treads on his truck's tires is unsupported by any evidence other than his own statement, which is impermissible testimony. However, presuming the tire tracks observed at the vacant garage do not, in fact, match the treads on defendant's truck, defendant does not explain what exculpatory value that mismatch might have. In the absence of any clearly articulated reason why defendant's presence necessarily *would* have left matching and observable tire tracks, "absence of evidence is not evidence of absence." *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 725 F 3d 244, 254 (CA DC, 2013).

Otherwise, the gravamen of defendant's argument is that Larry and Detective Menge lied. We find defendant's reasoning why Detective Menge planted blood in defendant's truck difficult to follow, but insofar as we can determine, defendant contends that a severely battered body in the back of his truck would have left enormously more biological evidence, Detective Menge never produced a photograph of the blood splatter, and so, apparently, defendant believes Detective Menge must have planted the blood so that the prosecution would have enough evidence to obtain a conviction. Leaving aside the circular nature of defendant's logic, the record *does* contain photographs of suspected blood in defendant's truck. Furthermore, the evidence that defendant said he had washed the truck is consistent with relatively minimal amounts of biological evidence remaining. Finally, the jury was able to observe Detective Menge's testimony and assess his credibility. *Blevins*, 314 Mich App at 357. The jury chose to believe Detective Menge, and we have not been provided with any convincing reason why we should undermine the jury's essential role in the trial.

Defendant's attack on Larry's testimony amounts to little more than his assertion on appeal that he never confessed to Larry. Again, the jury's role is to assess witness credibility, and the jury found Larry to be credible. Defendant also contends that there were inconsistencies in the statements and testimonies given by the witnesses who found the victim's body. The minor inconsistencies defendant highlights, apparently just which of them called 911, have no relevance to this matter that we can discern. In any event, once again, the jury was able to observe and evaluate the credibility of all of the witnesses.

Although not mentioned in his brief, defendant has additionally submitted an affidavit from Brenda Lee Hopkins, defendant's aunt. Newly discovered evidence may, under extraordinary circumstances, warrant a new trial. *People v Grissom*, 492 Mich 296, 312-319; 821 NW2d 50 (2012). However, "a defendant must show that (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *Id*. at 313 (internal quotation omitted). We note that Hopkins was discussed as a possible witness at trial and thus her testimony seemingly could have been discovered and produced at trial. However, granting

defendant the benefit of the doubt regarding the third requirement, we find the first and fourth requirements also unsatisfied.

Substantively, the affidavit describes various events on Friday, December 30, 2016, which is three days before the victim's body was discovered. Taken at face value, Hopkins's affidavit indicates that the victim was still alive that day when she and defendant parted ways, defendant's behavior did not appear to be particularly exceptional that day, and at no point that day was defendant or his truck covered in blood. The affidavit does *not* cast any light on the intervening days until the victim's body was discovered. According to the medical examiner who conducted the autopsy, no date or time of death could be determined, so the affidavit does not tend to show that defendant could not have murdered the victim. The affidavit tends to show only that the murder must have been committed sometime between December 30 and January 2, which was already established. Furthermore, evidence was presented to the jury that the victim was last seen alive on December 30, so the affidavit is also cumulative. We find Hopkins's affidavit of no clear probative value, which does not suggest that her testimony would make a different result probable on retrial.

Finally, defendant appears to assert that either Detective Menge or a private investigator failed to undertake "due deligance [sic]" in carrying out investigations at defendant's request or on the basis of defendant's statements. It appears that at least some of his complaints were brought out before the jury. In any event, we are unable to discern any legal argument made in support of defendant's contentions, even if they could be factually proven at this stage of proceedings. Criminal defendants appearing *in propria persona* are entitled to "be held to less stringent standards than formal pleadings drafted by lawyers," but they remain obligated to provide at least some support for their claims. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976) (internal quotation and citation omitted). We cannot address this claim because defendant has not provided us with sufficient argument to support it.

## V. CONCLUSION

We conclude that there was sufficient evidence for a reasonable trier of fact to find defendant guilty of second-degree murder. We conclude that the jury was entitled to find that defendant was not subjected to the kind of reasonable provocation that would negate a finding of malice. We have considered defendant's Standard 4 brief and the affidavit from Hopkins, and we find them unpersuasive.

Affirmed.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Amy Ronayne Krause