*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEANGELO JONES,

        Defendant-Appellant.

UNPUBLISHED
August 20, 2020

No. 344107
Macomb Circuit Court
LC No. 2014-003316-FC

Before: REDFORD, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and assault with intent to do great bodily harm, MCL 750.84. We affirm.

This case was the subject of prior consolidated appeals in which the prosecutor appealed from an order of the circuit court granting the motions of defendant and two codefendants, Marquis O'Neal and Donald Roberts, to quash bindovers and dismiss charges of second-degree murder against defendant, O'Neal, and Roberts. See *People v O'Neal*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2016 (Docket Nos. 326985, 326987, and 326988). The case stems from an altercation involving defendant, O'Neal, Roberts, Belinda Jones (who is defendant's mother), and James Williams. Williams confronted the group outside Belinda's apartment while holding a knife and stick. Defendant tackled Williams to the ground, then Roberts and O'Neal joined defendant in physically assaulting Williams for several minutes, and, at some point during the altercation, Belinda stabbed Williams. Williams eventually died from complications related to the stab wounds. In its prior opinion, this Court reversed the circuit court's dismissal of the second-degree murder charges against defendant, O'Neal, and Roberts, and remanded for further proceedings. *Id*. at 1-2, 6.[1] On remand, O'Neal and Roberts pleaded guilty

---

[1] In the meantime, Belinda was convicted in a jury trial of second-degree murder and sentenced to 16 to 35 years' imprisonment. This Court affirmed her conviction and sentence. *People v Jones*,

to assault with intent to do great bodily harm in exchange for dismissal of the second-degree murder charges. Defendant rejected a similar plea offer and proceeded to trial, at which a jury found him guilty of second-degree murder and assault with intent to do great bodily harm. Defendant later filed an *in propria persona* motion for a new trial, but that motion was subsequently replaced by a motion for a new trial or a *Ginther*[2] hearing filed by defendant's appointed appellate counsel, who also filed this appeal. Following a *Ginther* hearing, the trial court denied defendant's motion for a new trial.

## I. DEFENDANT'S PRINCIPAL BRIEF ON APPEAL

Defendant first argues that he was denied the effective assistance of his trial counsel, Azhar Sheikh. We disagree.

Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*.

"To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted). To establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Defense counsel is afforded wide discretion on matters of trial strategy, *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013), and the defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy, *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). The fact that a strategy may have failed does not establish ineffective assistance of counsel. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Muhammad*, 326 Mich App 40, 65; 931 NW2d 20 (2018) (quotation marks and citation omitted). "Furthermore, the failure to call

---

unpublished per curiam opinion of the Court of Appeals, issued August 22, 2017 (Docket No. 330113).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citation omitted).

Defendant first asserts that his trial counsel, Sheikh, was ineffective for failing to call Jonathan Martin as a witness or to seek to admit his prior testimony from Belinda's trial. We disagree. Although Sheikh recommended that defendant not present any witnesses, Sheikh nonetheless attempted to secure Martin's presence in accordance with defendant's wishes. In particular, Sheikh effectuated service of a subpoena on Martin and spoke to Martin the day before he was scheduled to appear; Martin confirmed that he had received the subpoena and that he would appear at trial the next day, but Martin then failed to appear. Multiple unsuccessful efforts were made to contact Martin after he failed to appear. Hence, to the extent defendant suggests on appeal that Sheikh failed to attempt to call Martin as a witness, the record contradicts this assertion, and defendant has failed to establish the factual predicate of his claim. *Douglas*, 496 Mich at 592.

Further, defendant has failed to adequately support his appellate contention that Sheikh should have sought to introduce Martin's prior testimony from Belinda's trial. Defendant suggests that when Martin failed to appear at trial, he should have been deemed "unavailable" under MRE 804(a) and his former testimony at Belinda's trial could thus have been admitted under MRE 804(b)(1). Assuming that Martin could have been declared "unavailable" under MRE 804(a), defendant fails to explain how the requirements for admitting Martin's former testimony under MRE 804(b)(1) would have been satisfied. MRE 804(b)(1) provides:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Defendant fails to explain how the requirements of MRE 804(b)(1) would have been satisfied. In particular, defendant does not explain how the prosecutor would have had an opportunity and similar motive at Belinda's trial to develop Martin's testimony as it pertains to defendant's actions or other facts pertinent to defendant, as opposed to Belinda's actions and other facts pertinent to Belinda. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Defendant has thus failed to properly present this aspect of the issue for appellate review. *Id*. And because defendant has not established that Martin's prior testimony at Belinda's trial would have been admissible at defendant's trial, he has failed to show that Sheikh was ineffective for failing to seek to admit Martin's prior testimony. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

Moreover, as noted, although Sheikh tried to obtain Martin's presence at trial in accordance with defendant's wishes, Sheikh did not recommend calling Martin or any other defense witnesses. At the *Ginther* hearing, Sheikh explained that Martin's testimony was not pivotal given that there was already testimony about Williams going to defendant's home, cussing, and having weapons. Further, Martin's credibility would have been subject to serious challenge, given Martin's admission at Belinda's trial that he lied to the police about this matter. Overall, no basis exists to question Sheikh's strategic assessment that Martin's testimony was not needed, and the failure to present Martin's testimony did not deprive defendant of a substantial defense.

Defendant next argues that Sheikh was ineffective for failing to call Dr. Ali Saad, or to retain another medical expert, to testify about Williams' aggressive or combative behavior in the hospital after he was stabbed. We disagree. Sheikh stated at trial that after he and defendant conferred on the matter, and defendant waived Dr. Saad's presence at trial, meaning defendant consented to the decision not to call Dr. Saad as a witness. Waiver occurs when a defendant affirmatively approves of a given action. *Jackson*, 313 Mich App at 420. When waiver occurs, the error is extinguished, which "precludes defendant from raising the issue on appeal." *People v Carter*, 462 Mich 206, 209, 215; 612 NW2d 144 (2000). In any event, even if this issue is not waived, defendant provides nothing more than speculation concerning what Dr. Saad or another medical expert would have testified.

Further, at trial, Sheikh stated that it would have been strategically dangerous to call Dr. Saad because it was unknown what information the prosecutor would have obtained on cross-examination. At the *Ginther* hearing, Sheikh testified that he consulted medical experts but did not retain a medical expert to review Williams' medical records because there did not appear to be any defense theory that could be supported by the medical records, and any report generated by a defense expert would have to be shared with the prosecutor, which was a risk because the report could be unfavorable. Also, although defendant claims that testimony from Dr. Saad or another medical expert would have established that Williams acted in an aggressive or combative manner at the hospital after the stabbing, there was abundant testimony at trial regarding Williams' aggressive behavior during the time leading up to the stabbing, which was more relevant to defendant's self-defense or defense of others theory than Williams' behavior at the hospital after he was stabbed. Further, a police detective testified that he went to the hospital after the stabbing and, at the hospital, Williams was combative and not compliant, so the detective was unable to take photographs of Williams. Hence, there was already evidence from a prosecution witness about Williams' behavior at the hospital. Defendant has provided no basis to question Sheikh's strategic assessment that it was unnecessary to call Dr. Saad or another medical expert, and defendant was not denied a substantial defense.

Defendant next argues that Sheikh was ineffective for failing to adequately prepare defendant to testify at trial. The record contradicts this contention. Sheikh explained at trial that he had talked to defendant about whether defendant should testify. The trial court repeatedly advised defendant that it was his decision alone whether to testify, and defendant expressed his understanding of this point and chose not to testify. Although defendant suggested that his decision not to testify was based on the lack of adequate preparation to testify, Sheikh took exception to this claim, and the trial court stated that it had no reason to believe that Sheikh had not adequately counseled defendant. Further, at the *Ginther* hearing, Sheikh testified that he had extensive discussions with defendant regarding his decision whether to testify. Sheikh gave advice

to defendant to prepare in case he did testify, including that he would be under a microscope and that he should remain calm and not be combative or allow the prosecutor to get under his skin. Sheikh testified that defendant's claim that he was not adequately prepared to testify was false. Sheikh explained that defendant decided not to testify after having been properly advised by Sheikh. The record supports the trial court's finding that Sheikh adequately counseled and prepared defendant regarding his decision whether to testify. Defendant's contention that he was denied the effective assistance of counsel on this point lacks merit.

Defendant next contends that Sheikh was ineffective for failing to object on double-jeopardy grounds to the fact that defendant was charged with, and convicted of, both second-degree murder and assault with intent to do great bodily harm. We disagree.

"The United States and Michigan Constitutions protect a defendant from being placed in jeopardy twice for the same offense." *People v Baham*, 321 Mich App 228, 246; 909 NW2d 836 (2017), citing US Const, Am V, and Const 1963, art 1, § 15.

> When considering whether two offenses are the "same offense" in the context of the multiple punishments strand of double jeopardy, we must first determine whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent. If, however, the legislative intent is not clear, courts must then apply the abstract legal elements test articulated in [*People v Ream*, 481 Mich 223, 238; 750 NW2d 536 (2008),] to discern legislative intent. [*Baham*, 321 Mich App at 246 (brackets and citation omitted).]

"Under the abstracts-legal-elements test, two offenses will only be considered the 'same offense' where it is impossible to commit the greater offense without also committing the lesser offense." *Id*. at 246-247 (quotation marks and citation omitted). Stated differently, "it is not a violation of double jeopardy to convict a defendant of multiple offenses if each of the offenses for which defendant was convicted has an element that the other does not." *Id*. at 247 (quotation marks and citation omitted). "Because the statutory elements, not the particular facts of the case, are indicative of legislative intent, the focus must be on these statutory elements." *Ream*, 481 Mich at 238.

"The first criterion in determining legislative intent is the specific language of the statute." *People v Barber (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 339452); slip op at 4 (citation omitted). A provision of the assault with intent to do great bodily harm statute states, "This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation of this section." MCL 750.84(3). This statutory language plainly reflects a legislative intent to permit punishment and conviction for both assault with intent to do great bodily harm and a violation of another criminal statute. Indeed, this Court recently recognized this very point by stating that MCL 750.84(3) "expressly allows multiple convictions and punishments where the same conduct violates MCL 750.84(1) and some other criminal statute." *Barber*, ___ Mich App at ___; slip op at 5. In other words, MCL 750.84(3) "allow[s] a trial court to punish a defendant for violation of MCL 750.84 together with any other violation of law arising out of the same conduct." *Barber*,

___ Mich App at ___; slip op at 6. Therefore, because the legislative intent to allow multiple punishments is clear, this Court is required to abide by that intent. *Baham*, 321 Mich App at 246.

But even if the legislative intent was otherwise unclear, application of the abstract-legal-elements test shows a legislative intent to permit punishments for both second-degree murder and assault with intent to do great bodily harm. "The elements of assault with intent to do great bodily harm less than murder are (1) an assault, i.e., an attempt or offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." *People v Bailey*, 451 Mich 657, 668-669; 549 NW2d 325 (1996), amended on other grounds 453 Mich 1204 (1996) (quotation marks and citation omitted). "The elements of second-degree . . . murder are (1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm." *Id*. at 669 (quotation marks and citation omitted).

> While the mens rea of intent to inflict great bodily harm that is necessary for [assault with intent to do great bodily harm] is sufficient to meet the required mens rea for second-degree murder, the greater crime can also be committed with different mental states than intent to inflict great bodily harm. Therefore, the greater offense of second-degree murder can be committed without committing the lesser offense of assault with intent to do great bodily harm less than murder . . . . [*Id*.]

Because second-degree murder can be committed without committing assault with intent to do great bodily harm, *id*., application of the abstract-legal-elements test reflects a legislative intent to permit punishment for both offenses. It necessarily follows that second-degree murder and assault with intent to do great bodily harm are not considered the "same offense" for the purpose of the multiple-punishments strand of double-jeopardy principles. See *Baham*, 321 Mich App at 246-247 ("Under the abstracts-legal-elements test, two offenses will only be considered the 'same offense' where it is impossible to commit the greater offense without also committing the lesser offense.") (quotation marks and citation omitted).

Accordingly, any objection by Sheikh on double jeopardy grounds would have been meritless and futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).[3]

Defendant next argues that Sheikh provided ineffective assistance with his handling of the supplemental jury instruction that the trial court provided in an attempt to explain the meaning of the "natural and probable consequences" language in the instruction on the mental state

---

[3] Defendant alternatively argues that he is entitled to relief based on a substantive double-jeopardy argument, independent of his double-jeopardy argument related to his ineffective assistance claim. Defendant's substantive double-jeopardy argument, however, simply restates his double-jeopardy argument related to his ineffective assistance claim, and so it is meritless for the reasons already explained.

requirement for aiding and abetting second-degree murder. After the jury expressed difficulty in understanding this language, the trial court provided a written supplemental instruction explaining that "another way of saying the natural and probable consequences is the criminal act committed by the principal is an incidental consequence which might reasonably be expected to result from the intended wrong." Sheikh objected to this instruction because he was not comfortable with the word "incidental." Defendant now says that, even though Sheikh objected, he was ineffective for failing to object on the ground that the language of the supplemental instruction came from a nonbinding unpublished opinion of this Court. Defendant's argument fails.

Defendant has cited no authority precluding a trial court from utilizing language from an unpublished opinion of this Court when crafting a supplemental instruction. He has thus failed to properly present this issue for appellate review. *Kelly*, 231 Mich App at 640-641. In any event, it is well established that, "[a]lthough this Court's unpublished opinions are not binding, they may be instructive or persuasive." *People v Manuel*, 319 Mich App 291, 301 n 4; 901 NW2d 118 (2017). Also, the pertinent language from the unpublished opinion that the trial court used in the supplemental instruction was derived from our Supreme Court's opinion in *People v Robinson*, 475 Mich 1, 9; 715 NW2d 44 (2006). Accordingly, any further objection by Sheikh on the meritless ground now asserted by defendant would have been futile, and defendant thus has not shown that Sheikh was ineffective. *Ericksen*, 288 Mich App at 201.[4]

Defendant next argues that Sheikh was ineffective for not moving to enforce the procedure required by MCL 780.972 and MCL 780.961(2). According to defendant, the prosecutor failed to present evidence at the time of the warrant issuance at the preliminary examination and at trial that defendant's actions were not justified under self-defense principles. Defendant asserts that a proper pretrial motion could have led to dismissal of the case. Defendant's argument lacks merit.

Defendant merely asserts that the prosecution failed to present evidence at the time of the warrant issuance, at the preliminary examination, and at trial that defendant's actions were not justified under self-defense principles. Defendant provides no substantive analysis supporting that

---

[4] Like with his double-jeopardy argument, defendant claims that he is entitled to relief on a substantive claim of instructional error, independent of his instructional-error argument related to ineffective assistance. That substantive claim fails, however. Again, defendant fails to cite any authority precluding the trial court from utilizing language from an unpublished opinion of this Court when crafting a supplemental instruction. Moreover, the pertinent language from the unpublished opinion that the trial court used in the supplemental instruction was derived from our Supreme Court's opinion in *Robinson*, 475 Mich at 9, and it follows that the trial court's supplemental instruction was in accordance with applicable legal principles explicated by our Supreme Court in *Robinson*. Thus, the trial court's supplemental instruction fairly presented the issues to be tried and adequately protected defendant's rights. See *Head*, 323 Mich App at 537 ("An imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights."). Reviewing the jury instructions as a whole, there was no error requiring reversal. See *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998) ("This Court reviews jury instructions as a whole to determine whether there is error requiring reversal.").

bare assertion; that is, he does not explain why he thinks the required evidence was not presented. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Defendant has thus failed to properly present this aspect of the issue for appellate review. *Id*. Moreover, contrary to defendant's argument, the record reflects that defendant and Sheikh did in fact make arguments and file pretrial motions raising this issue, and the trial court repeatedly rejected those arguments and denied those motions. Further, Sheikh presented a self-defense or defense-of-others theory at trial, and the jury rejected that defense theory by convicting defendant. Even if the prosecutor failed to present the required evidence at the time of the warrant issuance or at the preliminary examination, defendant fails to identify any appropriate remedy that could be granted at this point. The statutory requirement is intended to relieve a defendant who has a self-defense claim from having to go to trial unless the prosecutor has presented sufficient evidence to defeat the self-defense claim. But the trial has already occurred, and this Court cannot relieve defendant of the burden of a trial that has already happened. And with respect to the statutory requirement to present evidence at trial, the jury heard the evidence at trial and rejected defendant's self-defense or defense-of-others claim.

Overall, defendant has failed to show that Sheikh should have done anything differently with respect to seeking to enforce the requirements of MCL 780.961(2) and MCL 780.972, or that any such additional actions by Sheikh were reasonably likely to have led to a different outcome in the case. Defendant's ineffective assistance of counsel claim on this point is thus devoid of merit.

Defendant next argues that the trial court erred in shackling him at trial. We agree that the trial court erred, but we conclude that defendant suffered no prejudice requiring reversal. Defendant's ineffective assistance of counsel claim on this issue is likewise unavailing.

To preserve a challenge to his shackling at trial, a defendant must object to the shackling or ask to be unshackled. See *People v Davenport*, 488 Mich 1054, 1054 (2011). At the beginning of the second day of trial, after a juror saw defendant enter the courtroom in his shackles, Sheikh told the trial court that defendant did not wish to proceed with the jury, but the trial court ruled that the case would go forward with the jury given that the juror who saw defendant's shackles was removed from the jury and did not tell the only other juror to whom she spoke that she had seen defendant enter the courtroom that day. Later, Sheikh told the trial court that the deputies and court staff had indicated that defendant's legs needed to remain shackled for security reasons. Sheikh said that defendant was concerned that the jury would hear the shackles when he stood up and sat down for the jury as it entered the courtroom. Sheikh then had defendant stand up and sit down to indicate the sound that would be made by the shackles. The trial court stated that it did not hear the shackles and that the table had a curtain that would prevent the jury from seeing the shackles. The trial court thus denied defendant's request to remove the shackles. Therefore, the shackling issue is preserved with respect to any claim of improper shackling on the second day of trial and thereafter. However, to the extent that defendant is claiming that he was improperly shackled during jury selection, which occurred on the first day of trial, defendant's argument is unpreserved because no objection or request to remove the shackles was made until the second day of trial, which was after the jury was selected.

A trial court's decision to shackle a defendant is reviewed for an abuse of discretion under the totality of the circumstances. *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

The unpreserved aspect of the issue is reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain error test, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) the error prejudiced the defendant by affecting the outcome of the proceedings. *Id*. at 763. If a defendant satisfies those requirements, reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 763-764.

This Court has explained:

> Included within the right to a fair trial, absent extraordinary circumstances, is the right to be free of shackles or handcuffs in the courtroom. While this right is not absolute, a defendant may be shackled only on a finding supported by record evidence that this is necessary to prevent escape, injury to persons in the courtroom or to maintain order. But even if a trial court abuses its discretion and requires a defendant to wear restraints, the defendant must show that he suffered prejudice as a result of the restraints to be entitled to relief. A defendant is not prejudiced if the jury was unable to see the shackles on the defendant. [*Payne*, 285 Mich App at 186 (quotation marks, brackets, and citations omitted).]

"Further, when jurors inadvertently see a defendant in shackles, there still must be some showing that the defendant was prejudiced." *People v Horn*, 279 Mich App 31, 37; 755 NW2d 212 (2008).

It appears that the trial court abused its discretion by requiring defendant to wear leg shackles. The record is bereft of any evidence that shackling was necessary to prevent escape, to prevent injury to persons in the courtroom, or to maintain order, nor did the trial court make any findings to that effect on the basis of such evidence. See *Payne*, 285 Mich App at 186-187.

Yet defendant has presented no evidence that he was prejudiced by the shackling. The only juror who saw defendant in his shackles when defendant was brought into the courtroom was removed from the jury and did not tell any other jurors about what she had seen. Contrary to defendant's appellate contention, the trial court thoroughly inquired into this matter by questioning Juror 394, the juror who saw defendant enter the courtroom while shackled and who was then removed from the jury, as well as by questioning Juror 203, the juror to whom Juror 394 spoke after seeing defendant, to ensure that Juror 394 did not reveal what she had seen. Further, the trial court determined that defendant's shackles could not be heard when he stood up and sat down, and the court noted that the shackles were not visible because of skirting on the defense table. This Court "defer[s] to the trial court's superior opportunity to observe the defendant and to determine whether the defendant's appearance prejudicially marks him or her as a prisoner." *Payne*, 285 Mich App at 186. Sheikh likewise testified at the *Ginther* hearing that the jury would not have seen the shackles given the skirting on the defense table.

-9-

Defendant provides nothing but speculation to suggest that members of the jury pool could have seen his shackles when he was seated at the defense table during jury selection. Sheikh testified at the *Ginther* hearing that he did not recall defendant being shackled during jury selection and that, although potential jurors were seated in the main gallery behind defendant during jury selection, they were not allowed to sit in the front row. Defendant testified at the *Ginther* hearing that he was wearing leg shackles during jury selection and that the courtroom was full of people during jury selection, but defendant did not know if people in the courtroom were potential jurors or just other observers or witnesses.

Overall, there is no indication of prejudice because there is no evidence that any juror, other than the juror who was removed from the jury, saw defendant in his shackles. See *Payne*, 285 Mich App at 186. But even if any other jurors had inadvertently seen defendant in shackles, defendant has identified no basis on which to conclude that he would have thereby been prejudiced. See *Horn*, 279 Mich App at 37. And no further evidentiary hearing was required given the trial court's careful and thorough review of the matter both at trial and at the *Ginther* hearing.

Defendant's ineffective assistance of counsel claim on this issue also fails. As noted, Sheikh in fact did convey to the trial court defendant's concerns regarding his shackling. Even if defendant believes that Sheikh should have made a more definitive request to remove the shackles or that he should have raised the issue earlier, the fact remains that, as explained above, defendant has not identified any prejudice arising from his shackling. Defendant has failed to demonstrate a reasonable probability that, but for any unprofessional errors on the part of Sheikh, the result of the trial would have been different. See *Randolph*, 502 Mich at 9.

## II. DEFENDANT'S STANDARD 4 BRIEF ON APPEAL

Defendant contends that the trial court erred by providing the jury an instruction on identification and proper considerations to use in deciding whether to accept or reject eyewitness identifications. Defendant asserts that providing this instruction contradicted the defense theory of self-defense or defense of others. We disagree.

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Defendant did not object to the identification instruction. Therefore, the issue is unpreserved, as defendant concedes.

We note, however, that defendant did not merely fail to object to the identification instruction; his trial attorney, Sheikh, affirmatively approved of the trial court's instructions. After the trial court provided its final instructions to the jury, including the challenged identification instruction, the trial court asked the attorneys if they were satisfied with the reading of the instructions, and Sheikh responded, "Yes, your Honor, we are." By expressly approving the jury instructions, defendant waived review of the alleged instructional error. See *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011). Waiver extinguishes any error, meaning that there is no error to review. *Id.*; *Carter*, 462 Mich at 215-216. We will nonetheless address the present issue.

-10-

Questions of law concerning jury instructions are reviewed de novo. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). The trial court's determination regarding the applicability of a jury instruction to the facts of a case is reviewed for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). In determining whether an error occurred, this Court considers the instructions as a whole, rather than piecemeal. *Kowalski*, 489 Mich at 501. Unpreserved claims of instructional error are reviewed for plain error affecting a defendant's substantial rights. *Id.* at 505-506.

"[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). In other words, "[a]s an essential part of [its] case, the [prosecution] must identify the accused as the person who committed the alleged offense." *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). It follows that no conviction can be sustained if the prosecution fails to prove the defendant's identity beyond a reasonable doubt. See *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976).

Clearly, the prosecution had the burden of proving defendant's identity as the person who committed the alleged offenses. This is true regardless of the defense's theory of self-defense or defense of others. Numerous eyewitnesses testified at trial about the violent confrontation in which Williams was fatally injured and about the actions of the multiple participants in that affray, including defendant, O'Neal, Roberts, Belinda, and Williams. Therefore, given the prosecution's obligation to prove defendant's identity and the multiple eyewitnesses to the fight that involved many persons, the trial court did not err by instructing the jury on identification and proper considerations to use in deciding whether to accept or reject eyewitness identifications.

Overall, the identification instruction in this case fairly presented the issues to be tried and adequately protected defendant's rights. *Head*, 323 Mich App at 537 ("An imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights."). Reviewing the jury instructions as a whole, there was no error requiring reversal. *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998) ("This Court reviews jury instructions as a whole to determine whether there is error requiring reversal.").

Defendant next argues that by instructing the jury on identification, the trial court deprived defendant of his constitutional right to present a defense. We disagree.

To preserve an argument that the trial court denied a defendant the constitutional right to present a defense, that issue "must be raised before and considered by the trial court." *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). Defendant did not assert at trial that the identification instruction violated his constitutional right to present a defense. Therefore, the issue is not preserved for review. Moreover, as explained earlier, defendant waived any challenge to the identification instruction because his trial attorney affirmatively approved of the trial court's instructions. *Kowalski*, 489 Mich at 503-504. Waiver extinguishes any error, meaning that there is no error to review. *Id.*; *Carter*, 462 Mich at 215-216. We will nonetheless address the issue.

This Court reviews an unpreserved issue for plain error affecting substantial rights. *Solloway*, 316 Mich App at 197.

This Court has explained:

> A criminal defendant has a due process right to present a defense under the state and federal Constitutions. But the right to present a defense is not absolute. The defendant must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. [*Id*. at 198 (quotation marks and citations omitted).]

"Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense." *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002).

Defendant contends that the trial court erred in instructing the jury on identification and that this instructional error deprived him of his constitutional right to present a defense. But as explained earlier, the identification instruction was not improper. Because no instructional error occurred, no such error infringed defendant's right to present a defense. Defendant was afforded a full opportunity to present his self-defense and defense-of-others theories to the jury at trial. Moreover, the trial court instructed the jury on the self-defense and defense-of-others theories, and defendant identifies no error in those instructions. Hence, defendant's argument that he was denied his constitutional right to present a defense is unavailing.

Defendant next argues that his trial counsel, Sheikh, was ineffective for failing to object to the trial court's identification instruction. Because no *Ginther* hearing was held with respect to this ineffective assistance claim, this Court's review is limited to mistakes apparent on the existing record. *Payne*, 285 Mich App at 188. As discussed earlier, the trial court did not err in instructing the jury on identification. Any objection by Sheikh would thus have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201. Accordingly, defendant's argument fails.

Defendant next argues that he is entitled to maintain an independent action for relief from judgment under MCR 2.612(C)(1)(c) premised on fraudulent conduct on the part of the prosecution and its forensic pathology expert, Dr. Mary Pietrangelo. Defendant suggests that fraudulent conduct occurred because Dr. Pietrangelo changed her opinion about the number of stab wounds Williams suffered. Defendant asks that this Court "rescue" him and reinstate the earlier dismissal of the second-degree murder charge. Defendant's argument is unavailing.

"Generally, an issue is not properly preserved unless a party raises the issue before the trial court and the trial court addresses and decides the issue." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). In particular, to preserve an argument seeking relief from judgment under MCR 2.612(C), a defendant must file a motion for relief from judgment under that court rule. *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005). Defendant did not raise this issue in a motion for relief from judgment. It is thus unpreserved.

Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

Defendant's argument is confusing. Defendant asks that this Court "rescue" him but also asserts that he is entitled to maintain an independent action for relief from judgment under MCR 2.612(C)(1)(c), which provides for relief from judgment on the basis of "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." This Court is reviewing an appeal from defendant's criminal convictions and sentences, not an independent action. Whether defendant may file an independent action for relief from judgment has no bearing here. It is not this Court's role to help defendant make his argument or to render it comprehensible. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Therefore, defendant's argument fails.

Despite our confusion with defendant's argument, we nonetheless conclude that, contrary to defendant's contention, no evidence exists of fraudulent conduct on the part of the prosecution or Dr. Pietrangelo. "A fraud is perpetrated on the court when some material fact is concealed from the court or some material misrepresentation is made to the court." *Matley v Matley (On Remand)*, 242 Mich App 100, 101, 617 NW2d 718 (2000) (quotation marks and citation omitted).

At the beginning of the first day of trial, the prosecutor noted that Dr. Pietrangelo had altered her opinion regarding the number of stab wounds on Williams' body. In particular, according to the prosecutor, Dr. Pietrangelo now believed that there were two stab wounds rather than seven stab wounds as she had previously believed; Dr. Pietrangelo now opined that the other five wounds she had observed were the result of possible medical interventions. But this did not alter Dr. Pietrangelo's previously expressed opinion about the manner and cause of death because she believed that the remaining stab wounds caused Williams' death. Defense counsel conceded that the prosecutor had already shared all this information with the defense and that the case could still proceed to trial, and defendant himself agreed on the record that this information had been shared with him and that the trial could go forward.

Later in the trial, Dr. Pietrangelo testified that she now believed that Williams had suffered three stab wounds. Dr. Pietrangelo explained that she had originally believed that Williams suffered seven stab wounds, but in reviewing her records and medical records in preparation for trial, Dr. Pietrangelo realized that some of the wounds she had earlier categorized as stab wounds were actually the result of medical interventions or chest tube insertions. But Dr. Pietrangelo did not alter her previously stated view that the remaining stab wounds had caused Williams' death. Dr. Pietrangelo testified that the remaining stab wounds had initiated the entire series of events that led to Williams' death and that the stab wounds were thus the cause of his death. Dr. Pietrangelo explained that the cause of death was "[a]noxic encephalopathy status post cardiopulmonary arrest with resuscitation due to multiple stab wounds of the torso." Colloquially stated, Dr. Pietrangelo opined that Williams' brain was not functioning normally because it was deprived of oxygen for more than two weeks after he was resuscitated from a heart attack that resulted from multiple stab wounds to the torso.

In summary, although Dr. Pietrangelo changed her opinion regarding the number of stab wounds, this did not alter her conclusion that the remaining stab wounds had caused Williams' death. Hence, the change in Dr. Pietrangelo's testimony regarding the number of stab wounds would not have altered this Court's reasoning when it ordered the reinstatement of the second-degree murder charge against defendant. There is no evidence of fraudulent conduct on the part

-13-

of Dr. Pietrangelo or the prosecution. Rather, Dr. Pietrangelo merely recognized, after reviewing her records and the medical records, that there were fewer stab wounds than she had originally thought because some of the wounds that she once thought were stab wounds were actually the result of medical interventions or chest tube insertions. When the prosecution informed the trial court at the beginning of trial about the change in Dr. Pietrangelo's opinion, defense counsel and defendant agreed that the prosecution had already shared this information with the defense and that the trial could still go forward. Overall, defendant's allegation of fraudulent conduct lacks merit.

Defendant's final argument on appeal is that the cumulative prejudicial effect of the alleged errors denied him a fair trial. We disagree.

A claim of cumulative error is reviewed to determine whether the combination of alleged errors denied the defendant a fair trial. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). Whether the defendant was denied a fair trial is reviewed de novo. *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009).

"The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). The cumulative effect of the errors must have been seriously prejudicial in order to conclude that the defendant was denied a fair trial. *Id*. Moreover, the cumulative effect must undermine confidence in the reliability of the verdict before a new trial is granted. *Dobek*, 274 Mich App at 106. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id*. As discussed throughout this opinion, defendant has failed to establish that any prejudicial error occurred in this case. The only error that occurred was with respect to the shackling of defendant, but as explained earlier, defendant suffered no prejudice arising from that error. Because defendant has failed to establish that any prejudicial error occurred, there can be no cumulative prejudicial effect of errors requiring reversal. *Id*.

Affirmed.

/s/ James Robert Redford
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien